[No. 4582.]

## HARRIS v. THE PEOPLE.

**1.  Instructions—Homicide—Self-Defense—Appearances.**

In a prosecution for murder where the defense was self-defense, an instruction that in the absence of malice the killing would be manslaughter unless done in necessary self-defense, is not prejudicially erroneous as denying defendant's right to act upon appearances in defending himself, where the following instruction told the jury that defendant might act upon appearances.

**2.  Homicide—Self-Defense—"Retreat to the Wall"—Instructions.**

In a prosecution for murder where the defense is self-defense and defendant's testimony, if true, established a case of self-defense to which the common-law doctrine of "retreat to the wall" was not applicable and the people's testimony tended to establish a case to which said doctrine was applicable, it was prejudicial error to instruct the jury as to such doctrine without limiting its application to the case as established by the people's testimony, if found to be true.

**3.  Same.**

In prosecutions for murder where the defense is self-defense, the common-law doctrine of "retreat to the wall" is applicable in this jurisdiction only to such cases as where the defendant voluntarily enters into a fight, or where the parties engage in mutual combat, or where the defendant, being the assailant, does not endeavor in good faith to decline any further struggle before firing the fatal shot, or similar cases, and it is error to submit said doctrine to the jury without restricting it to such cases.

**4.  Instructions—Contradictory.**

Where, in a criminal prosecution, the court upon its own

motion gave an instruction which was prejudicially erroneous, the fact that in subsequent instructions given at defendant's request, and which were prefaced by the statement that they were given at defendant's request, correct instructions upon the same point were given, would not cure the error.

*Error to the District Court of Mesa County.*

Messrs. GOUDY & TWITCHELL and Mr. J. S. CAR-NAHAN, for plaintiff in error.

Mr. N. C. MILLER, attorney general, Mr. H. J. HERSEY, assistant attorney general, and Mr. S. G. McMULLIN, for the people.

Mr. JUSTICE CAMPBELL delivered the opinion of the court.

In the district court of Mesa county an information was filed charging defendant with the deliberate murder of Charles R. Sieber. Defendant admitted that he intentionally and fatally shot Mr. Sieber, but says he did so in defense of his own life. He was convicted of voluntary manslaughter and sentenced to the penitentiary for a term of years. Three rulings made by the trial court are relied upon for a reversal: *First,* that one of the members of the jury which tried the case was unfair and prejudiced against defendant; *second,* the assistant to the district attorney, in his closing speech to the jury, made use of abusive language to the hurt of defendant; *third,* the court erred in its instructions to the jury.

The judgment must be reversed because of errors in the court's instructions to the jury. The first two assignments pertain to matters that will probably not be presented if another trial be had, so they will not now be discussed.

As throwing light on the instructions attacked by defendant, the salient facts of the case will be helpful. The deceased Sieber was the president of a

cattle company which owned a large number of cattle. The defendant, whose home ranch is just across the Colorado state line, in the state of Utah, was the owner of about fifty head of cattle which ranged upon the public domain. Some feeling existed between Sieber and defendant because the company, in driving its herd across his ranch, gathered up some of his cattle and drove them from their accustomed range and branded them with its brand. Upon the day when the homicide occurred defendant and Sieber met, with no others present, about a mile distant from a pasture where the company's herd was being rounded up and cattle were being cut out for shipment. They were on horseback and, after some disputatious conversation relating to their differences, which led to no definite results, on the invitation of Sieber they rode side by side from the point where they met to this pasture for the purpose of talking with Mr. Jones, the foreman of the company, about the same difficulties. When they arrived there Jones' back was turned to them, and Sieber asked him if he was counting the cattle, to which an affirmiative answer was given, whereupon Sieber, without saying anything to any one, turned his horse and rode a distance of 400 or 500 feet to one Emory Knowles, an employee of the company, who was assisting in the round-up, and during this ride Harris turned back into the herd a steer that tried to escape therefrom, and then remained on his horse, which was not moving, until after Sieber reached Knowles. The defendant then, as theretofore that day, had on his person a revolver, a portion of which protruded from his pocket in which it was carried, and it was seen by Sieber before they reached the pasture. Dunnan, another employee of the company, was stationed between Jones and Knowles, and in passing him Sieber remarked that that man (referring to Harris) drew

a gun on him. Knowles was carrying, enclosed in a scabbard, a small Winchester rifle which could be used with one hand. Sieber, without first saying anything to Knowles, reached over and pulled the gun from the scabbard and, after securing the same, asked if it was loaded, and upon being informed that it was, threw the weapon across the saddle in front of him, and at once started back to the place where Harris was still sitting on his horse.

As to the foregoing there is no conflict, and for the purpose of the assignment directed against the instructions it is necessary to consider further only the testimony of the defendant himself, and to point out the only conflict in the evidence as to the situation of the parties after Sieber got the gun. Defendant testifies that Mr. Sieber did not say a word to him when he left him and went in the direction of Knowles, but that he saw Sieber draw the gun from the scabbard and start towards him. Several of the employees of the cattle company were carrying guns or revolvers which were visible to the defendant, and he says that when he saw Mr. Sieber coming towards him he apprehended trouble, and that for his own safety he at once started his horse on a walk towards deceased. As each one advanced, defendant says that deceased took his gun in one hand from the saddle where it had been lying and pointed it in his direction. Defendant thereupon started his horse into a trot, and as the parties approached nearer each other, Sieber drew the Winchester rifle down upon defendant, and when they had come within 10 or 20 feet of each other defendant threw his own revolver down on the deceased. Sieber thereupon exclaimed twice, "I am not going to hurt you," to which the defendant says he replied, "Drop it. Drop it," but as Sieber did not do so, he (the defendant), believing his own life in danger, and to save himself, fired in rapid succes-

sion three shots, the result of which was the death of Sieber.

The case is remarkably free from serious conflict in the evidence, as to its material points, so far as the same pertains to the instructions to be considered, and substantially the only difference is as to Sieber's demeanor and manner and the position in which he held, or carried, the gun after leaving Knowles and starting towards defendant. Defendant and some of the people's witnesses say that Sieber held the gun in front of him, pointed, some of the time, in the general direction of defendant, while other eye-witnesses say that the gun was held down by Sieber's side, at least most of the time. But for our present purpose, this conflict is not important.

1. Bearing in mind that the plea of self-defense was interposed, we proceed to consider the three instructions of which complaint is made. Instructions Nos. 8 and 9 given by the court, so far as they are pertinent to the objections here urged, are as follows:

"8. The distinguishing feature between murder and manslaughter is the ingredient of malice. Malice aforethought is as essential an ingredient of murder as the act of killing. In the absence of malice, either express or implied, such killing is manslaughter, unless you should find from the evidence that such killing was done in necessary self-defense. * * * "

"9. The jury are further instructed that when the killing is done with a deadly weapon, or a weapon calculated to produce, and actually producing death, malice may legitimately be inferred in the absence of proof that the act was done in necessary self-defense or upon sufficient provocation and cause, and the presumption in such case will be that the act was voluntary and committed with malice aforethought."

It is said that the material error in these instructions consists in denying the right of the person defending himself to act from appearances. The argument is that it is not necessary under the law that the defendant, to justify the killing, should have acted in necessary self-defense. It is sufficient that he acted in apparent self-defense.

It is the law that a defendant may be justified in taking human life if it appeared to him at the time, and would have so appeared to a reasonably prudent person in the same circumstances, that his life was in danger, although he was, in fact, not in danger. These two instructions are not substantially different from the provisions of our criminal code. It is true that nothing is said therein about appearances, as might well have been done, but in the very first sentence of Instruction No. 10 the jury are told that the defendant may act upon appearances, and in other instructions given by the court at the request of defendant it is most clearly and fully pointed out that the defendant, acting as a reasonably prudent person, had the right honestly and in good faith to act upon what the appearances were to him at the time. This is not a case where the court in one instruction has laid down the law correctly, and in another instruction incorrectly. Instructions 8, 9 and the first sentence of 10, taken together, as they should be, state the law as to appearances, as defendant himself contends for.

Instruction No. 10, given by the court, is as follows:

"The jury are further instructed that the right of self-defense is only given in emergencies to enable persons who are attacked and to whom it may reasonably appear that their lives or bodies are in danger of great bodily injury, to defend themselves; that this right is based upon what reasonable persons,

having due regard for human life, would do under similar circumstances, and the actions of the defendant in this case must be measured by this rule. (The right of self-defense is the right to defend one's self from such an attack, and when the attack is repelled or warded off, or when the assailant has declined further combat, the person assailed has no right to follow up his adversary and kill him after the attack has ceased, or after such time as it must have reasonably appeared to the person attacked further danger to life or body has passed.) [A slayer must use all reasonable means to avoid doing a fatal act; and cannot voluntarily put himself in a position to meet a combatant, knowing that by so doing a combat is liable to occur which will be fatal to one of them, and then plead self-defense to an information for killing his opponent in a fight. The killing in order to be justifiable must reasonably appear to have been the last resort for safety on the part of the party killing, and if the slayer who has once extricated himself from a position of impending danger at the hands of another, voluntarily re-enters that position, he cannot claim that it was done in necessary self-defense.]''

We do not pause to pass upon the first sentence of this instruction, for no complaint is made of it. But that portion immediately following, and by us included in parentheses, is said to be wholly inapplicable to the facts of this case, and also wrong in so far as it attempts to state the doctrine of ''retreat to the wall''; while the portion in brackets erroneously, and without qualification, states to the jury what is generally known as the common-law doctrine of retreat to the wall, which is said to be wholly inapplicable in this state under the facts.

We are not required to say that the portion of the instruction in parentheses is not applicable to

the facts of some other case, but there is some doubt about its being germane to the facts which this record discloses. There is no evidence here of a former attack or combat, or of any attack or combat—if combat there was at all—other than that which occurred at the time the fatal shooting took place. If, however, the reference in the parenthesis and in the bracketed part of this instruction is to the attack which immediately culminated in the fatal shooting, there is no evidence that, supposing deceased was the aggressor, such attack had been repelled or warded off by the defendant before the fatal shot was fired, or that the deceased had declined further combat, unless it can be said that defendant fired the fatal shot or shots after deceased was disabled, and before he was killed, and thus had warded off the attack; or unless it can also be said that the conduct of the deceased in procuring the gun and starting towards defendant was merely, and nothing more than, a challenge to a combat which was voluntarily accepted by defendant. But if the evidence does present such a state of facts, the court, instead of laying down the broad, unqualified doctrine of retreat to the wall, as though it applied to the case of self-defense clearly made out by defendant, if he told the truth, as well as to the case claimed to have been made by the people, should, by apt language, have confined the doctrine to the latter. The common-law doctrine of retreat to the wall, as this court has said, in *Babcock v. The People,* 13 Colo. 515; *Boykin v. The People,* 22 Colo. 496, and *Ritchey v. The People,* 23 Colo. 314, has been modified by the more recent decisions, and is applicable in this jurisdiction only to such cases as where the defendant voluntarily enters into a fight or where the parties engage in mutual combat, or where the defendant, being the assailant, does not endeavor in good faith

to decline any further struggle before firing the fatal shot, and possibly to other similar cases. Trial courts should be careful to restrict it to them only; and had the court done so in Instruction No. 10 by saying in substance to the jury that, if they believed from the evidence in the cause that the defendant voluntarily entered into the fight, or the parties were engaged in mutual combat, or that the defendant was the assailant, and had not declined further struggle, the instruction would not have been prejudicial, provided the facts, from the people's standpoint, justified it.

We do not have to say, in holding this instruction erroneous, that there was no testimony whatever in the record, and no theory of the case, to which it might not be applicable; but it is sufficient merely to say that the doctrine stated broadly, as it is in this instruction, must inevitably have misled the jury and induced them to think that the defendant's conduct, even if his own testimony was true, was to be measured by the rule thus laid down.

It is wrong for a court to instruct as to the law in the absence of facts to which it is rightly applicable, and it is just as erroneous to state abstract propositions of law, each applicable to a different state of facts, follow it up by applying one doctrine to a given hypothetical case, and say nothing to the jury about the application of the other and opposing doctrines. Such a method of advising a jury must result in injury. And here emphasizing the abstract doctrine of retreat to the wall, though the court does not try to apply it to the facts, must, nevertheless, have led the jury to believe that the court would not have stated the doctrine had it not been applicable to the case, and since the court called their attention to it and no direction whatever was given to them how, or in what cases, to apply it, but, on the con-

trary, they were left to apply it to the facts as disclosed by the defendant's own evidence, injury may have resulted, and probably did result, to him.—*State v. Miller et al.* (Ore.), 74 Pac. 658.

The fact that the court, in other instructions requested by the defendant, gave correct instructions upon the theory of self-defense, would not render harmless the giving of this contradictory instruction. Instruction No. 10 was given by the court of its own motion, while attached to these other instructions was a statement that they were given at the request of the defendant. The jury might well believe that it was their duty to resolve the conflict between these instructions in favor of the one given by the court. We desire again to call to the attention of trial courts that, whenever they speak of the duty of a defendant to retreat to the wall, they should make it definite and plain to the jury in what circumstances the doctrine is applicable, and not lay down the broad doctrine, as in this instruction, without limiting it to cases where it belongs. There is also ground for saying that the parts of this instruction objected to are contradictory and inconsistent with each other, and, because of such vice, necessarily misled and confused the jury; but as the argument of counsel on both sides was confined to the specific objections heretofore noted, we deem it best to limit our decision to them.

For the error of the court in the giving of instruction No. 10, the judgment is reversed, and the cause remanded for a new trial.

*Reversed.*

Mr. JUSTICE STEELE dissents.