## Raymond Voight v. The State.

### No. 4269.    Decided March 18, 1908.

**1.—Murder—Charge of Court—Mutual Combat.**

Where upon trial for murder the evidence showed that the deceased was the aggressor, and that the defendant and his brother were forced to defend themselves or retreat, a charge on the law of mutual combat was unauthorized and reversible error.

**2.—Same—Retreat—Common Law—Statutory Law.**

Under the common law a party must retreat to the wall before killing his adversary or defending himself, but such is not the law of this State, and a party is not forced to retreat when attacked.

**3.—Same—Charge of Court—Defense of Another.**

Where upon trial for murder, the evidence showed that deceased had made previous threats against the defendant and his brother; that the deceased was engaged in an altercation with said brother, when defendant came upon the scene; that then deceased and his companion threatened to attack defendant also, the court should have charged as requested on the law of self-defense as well as defense of another.  Following Guffee v. State, 8 Texas Crim. App., 187.

Appeal from the District Court of Caldwell.  Tried below before the Hon. L. W. Moore.

Appeal from a conviction of murder in the second degree; penalty, fifteen years imprisonment in the penitentiary.

The opinion states the case.

*A. B. Storey and E. B. Coopwood,* for appellant.—On question of mutual combat and the charge of the court thereon:  Rosborough v. State, 21 Texas Crim. App., 672; Maines v. State, 35 Texas Crim. Rep., 109; 31 S. W. Rep., 667; Kelley v. State, 27 Texas Crim. App., 562; 11 S. W. Rep., 627; Polk v. State, 30 Texas Crim. App., 657; 18 S. W. Rep., 466; Everett v. State, 30 Texas Crim. App., 683; 18 S. W. Rep., 674; Ingram v. State, 43 S. W. Rep., 518; Clay v. State, 44 Texas Crim. Rep., 129; 69 S. W. Rep., 413; Reese v. State, 49 Texas Crim. Rep., 242; 91 S. W. Rep., 583; Armsworthy v. State, 49 Texas Crim. Rep., 622; 95 S. W. Rep., 526.  On question of self-defense:  Drake v. State, 45 Texas Crim. Rep., 273; 77 S. W. Rep., 7; Vann v. State, 45 Texas Crim. Rep., 434; 77 S. W. Rep., 813; Price v. State, 46 Texas Crim. Rep., 80; 79 S. W. Rep., 540; Goodman v. State, 49 Texas Crim. Rep., 185; 83 S. W. Rep., 196; Sprinkle v. State, 49 Texas Crim. Rep., 224; 91 S. W. Rep., 787.

*F. J. McCord,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Appellant was convicted of murder in the second degree, for the killing of Albert Roberts.

Deceased and appellant were brothers-in-law.  There had been trouble between them, and it is shown deceased had made threats against the life of appellant and his brother Fletcher, and also to whip or kill them, including some other members of the family, applying to them epithets of "damned Dutch son of bitches."  The reputation of deceased was put in issue, and he was shown to be a man who was given to fighting, raising disturbances and quarrelsome.  He was also a stout, vigorous man and weighing about 185 pounds, and about 30 years of age.  Appellant and his brother were boys, appellant being about 19 years of age, and Fletcher, his brother, being older.  Shortly before the killing, deceased secured a shotgun and purchased ammunition, stating at the time he was buying it for the purpose of killing appellant and his brother.  He further stated that he was going to the entertainment at Delhi for the purpose of raising trouble with the Voight boys.  The killing occurred en route home from the Delhi entertainment.  During

the day and prior to the killing at night, deceased and his friend Barker were together, going to the entertainment in company with each other; they left the entertainment together and remained together until the killing. All of the parties connected with this transaction attended the entertainment above-mentioned. After the entertainment the people left en route to their respective homes. Fletcher and another boy traveled together until they were about a mile from Delhi, when Fletcher rode to one side of the road, and alighted from his horse to attend to a call of nature. Just afterward deceased and Barker rode up, and deceased asked Fletcher if he had stated that he (deceased) had called Barker a son of a bitch. Fletcher applied in the affirmative. Deceased alighted from his horse, as did Barker, and remarked to Fletcher that it was a damned lie, and that it had to be settled right then. Fletcher made no reply. At this juncture appellant rode up, and deceased said to him, "Get down, it must be settled right here," shaking his hand at and cursing him. This was repeated the second time. Appellant then alighted from his horse, and took his position at his horse's head. Up to this time deceased was on the opposite side of his horse from appellant. He then came around at the head of his horse cursing, and started at appellant with his hand behind him, when appellant fired one shot which resulted fatally. The State introduced evidence to the effect that as appellant alighted from his horse he took his stand or position at or near the head of his horse, and remarked, in reply to deceased's statement to him, "Line up," or "get in line." It was further shown by the State's testimony that appellant shortly after firing the shot, asked if the deceased was dead, and being answered in the affirmative, said, if he was not he desired to finish him. Barker did not testify; in fact, there was a motion to continue the case to secure his testimony; and there is further evidence in the record going to show that Barker had left the State and had gone to Virginia. An examination of the body of deceased failed to disclose that he was armed. Appellant's contention is, that Barker took a pistol from deceased, and to that end desired to continue the case in order to secure Barker's testimony. The witnesses show that Barker disappeared immediately after the killing, and had not been seen in that neighborhood or country since. In fact, the evidence discloses that he left the State. We deem it unnecessary to discuss the application for continuance in view of the fact that the judgment will be reversed upon other grounds. The testimony of the absent witness may be obtained upon another trial.

The court limited the right of self-defense with a charge on mutual combat, as follows: "If defendant did voluntarily engage in a combat with deceased, knowing that it will or may result in the death or some serious bodily injury as may produce the death of the deceased or himself he cannot claim self-defense." We are of opinion under the authorities in this State, as applied to the evidence in the record, that the issue of mutual combat was not in the case. All the testimony shows is, that the brother of appellant, accompanied by a friend, was riding along

the public road going home at night about 12 o'clock. The deceased and Barker, his friend, were behind them; that the brother of appellant had stopped on the roadside to attend to a call of nature, when deceased and Barker came up. The deceased began a wordy altercation with Fletcher Voight in regard to some remarks that Fletcher should have made and threatened to settle the matter then and there. Both, deceased and Barker, alighted from their horses. At this juncture appellant, who was behind, in company with a friend, came upon the scene, whereupon deceased twice ordered him to alight from his horse; that he intended to have a settlement of the difficulties then and there. Appellant alighted finally, and deceased started at him, with his right hand thrown behind him, and his left hand somewhere across his breast. The shot was fired, resulting fatally. This shows the deceased the aggressor. There was nothing left for appellant and his brother to do, either or both, under the circumstances except to meet the trouble forced upon them or ride away or retreat. This they did not have to do under our law. It is not necessary for a party upon whom a difficulty is sought to be forced that he run away or retreat. While it might be a better policy, yet the law is not so written. If retreat is applicable under such circumstances, it must be by the party who brings or seeks to bring on the difficulty or provoke it, and while insulting language usually is not considered a provocation, yet that taken in connection with other circumstances attending the case may put the aggressive party in such an attitude of producing the occasion and bringing about the difficulty which terminates fatally. At least, he sets in motion the matters that bring on the difficulty, and is to that extent in the wrong, and if the law of retreat is applicable at this point, it must be to the man who originates the trouble and not to the party who is defending against it. Under the common law a party must retreat to the wall before killing his adversary or defending himself, but such is not the law of this State. With us the party in the wrong must do the retreating. Our law is more favorable to the man who is in the right, and places a less burden upon him in homicide cases than upon the man who is in the wrong and produces the occasion. There were some special charges asked by appellant seeking to avoid the consequences of the charge given, which will not be treated here by reason of the conclusion reached that mutual combat is not in the case. That passing out, it is not necessary to discuss some of the charges requested by appellant.

The following charge was requested by appellant: "If you believe from the evidence in the case, that when the defendant appeared on the scene of the killing, he found the deceased and his friend, Barker, down on the ground near the defendant's brother and heard the deceased call the defendant's brother a damn [liar], and stated that there must be a settlement then and there, and it reasonably appeared to the defendant from the acts and words and conduct of the deceased and Barker, that the deceased and Barker were then engaged in an unlawful assault upon the defendant's brother, then you are instructed that the defendant had

the right to use such force as appeared to him to be necessary to prevent said unlawful attack upon his brother." We are of opinion this charge should have been given, because the facts show, without contradiction, that when appellant came upon the scene, deceased was talking roughly to and denouncing the brother of appellant as a damned liar, stating to him that this trouble must be settled then and there, etc., and immediately commanded or ordered appellant to get down, that the matter must be settled. Up to that time appellant had had nothing to do with this immediate difficulty; was not aware that it was in existence; coming upon the scene in this condition of things, in the light of the previous threats made by the deceased against appellant and his brother, and viewing the matter as he did at night, under all the circumstances, this charge should have been given to the jury. Appellant had the right to defend his brother, and if he believed at the time that deceased, aided by Barker, was then beginning a difficulty with his brother Fletcher, with a view of carrying into execution previous threats made, and turning upon him and including him in the difficulty, the issue of self-defense on two phases is presented: first, practically as requested by appellant in the charge refused; and, second, in his own defense. The question involved here, as we understand this record, was ably discussed and correctly decided in Guffee v. State, 8 Texas Crim. App., 187. The Guffee case has been frequently under discussion since its rendition, and invariably followed.

Without going further with this question or elaborating it any more fully, we are of opinion that for the error of the court in charging on mutual combat, and the rejection of the charges asked by appellant, the judgment must be reversed and the cause remanded and it is so ordered.

*Reversed and remanded.*