No. 18,926.

JUAN DEDIOS VIGIL *v*. PEOPLE OF THE STATE OF COLORADO.
(353 P. [2d] 82)

Decided June 13, 1960.

Mr. HENRY BLICKHAHN, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. JOHN E. BUSH, Assistant for defendant in error.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

JUAN DeDios Vigil was convicted of murder in the second degree by a jury in Conejos County. From the judgment and sentence entered by the court, he brings this writ of error.

The defendant alleges several grounds upon which he relies for reversal of the conviction. One, relating to the admission of the exhibits, has no merit and deserves no comment. The other grounds are: 1. That the verdict is not sustained by the evidence and that his motion for directed verdict should have been sustained; or, in the alternative, that neither a case in first nor of second degree murder was made out and the verdicts covering those degrees should not have been submitted to the jury; 2. that the court erred in refusing to instruct the jury on involuntary manslaughter and to submit a verdict on that issue; 3. that the instruction on self-defense

is not in the language of the statute and does not properly state the law.

The circumstances surrounding the death which resulted in the trial and conviction of Vigil were related by several witnesses for the state and by the defendant himself when he was called upon to testify on his own behalf. The day in question was a local election day. A group of men were gathered on a road outside Capulin, Colorado, talking, singing and imbibing intoxicants. Among those in the group was Ralph Valdez, the decedent, who was a well-developed young man twenty-seven years of age. The defendant, a seventy year old man, traveling along the same road on the way to visit his daughter, encountered the group and stopped to join in the drinking. Although the various members of the group who were called upon to testify could not give in detail exactly what happened, the gist of their story was that someone heard a shot; at that time they looked, and the defendant and Valdez were about ten feet apart; that they heard no words passed between the decedent and the defendant; that it was not apparent at first that any one was hurt; that someone heard the defendant say in Spanish, "I killed someone." The defendant's version of the affair was that several weeks before the homicide the decedent and his brothers had stayed with defendant; that they had robbed him of $40.00; that he was afraid of them, and that they might hurt him. He put the gun, "an ancient model," in his pocket before going to town, but that he had not used it for a long time, and didn't even think it was loaded. He testified that during the drinking and singing decedent came up to him and struck him and cursed him and threatened to beat him, and that he pulled the gun out and waved it only to scare Valdez away; that the gun accidently discharged; that he did not intend to harm or kill anyone.

FIRST QUESTION TO BE DETERMINED.

*Should the court have directed a verdict of not guilty, or, if a denial of the motion was proper, should the ver-*

*dicts of first and second degree murder be withheld from consideration by the jury?*

This question is answered in the negative.

■ There was sufficient evidence to support the contention of the prosecution that the offense of murder in the first degree had been committed. Under the theory advanced in argument by the state, a jury could find from the evidence that because Vigil had been the victim of a robbery at the hands of decedent he was seeking revenge. Thus the motive and opportunity for deliberation was in the record for whatever weight the jury might give it. Although the evidence is of a negative character, it was within the province of the jury to determine whether it established beyond a reasonable doubt that there was no justification or considerable provocation in the circumstances of the homicide. Hence an instruction and form of verdict on second degree murder was proper.

SECOND QUESTION TO BE DETERMINED.

*Was the defendant entitled to instructions on involuntary manslaughter and excusable homicide and to have submitted to the jury a verdict on involuntary manslaughter?*

This question is answered in the affirmative.

■ The court had this identical question before it in *Baker v. People,* 114 Colo. 50, 160 P. (2d) 983. In elaborating on the answer to the question posed, we can do no better than to cite a few excerpts from the Baker case where an instruction on excusable homicide was declared proper and was given, but an instruction on manslaughter was refused. The court said:

"The information here charged murder in the first degree and consequently included all the lower grades of criminal homicide. It follows that if there was evidence relative to manslaughter offered by either the people or the defendant, its credibility and weight was for the jury to consider in determining the facts, and proper instructions upon manslaughter should have been

given. We have repeatedly held that if there is evidence tending to establish a statutory grade of homicide, the court's refusal to instruct thereon is error. (Citing cases.)"

■ In the case at bar, Vigil testified that he didn't think the gun was loaded and that he was merely waving it around to scare the deceased away and it went off accidently. The statute (C.R.S. '53, 40-2-7) defining involuntary manslaughter is:

"Involuntary manslaughter shall consist in the killing of a human being without any intent so to do; in the commission of an unlawful act or a lawful act which probably might produce such a consequence, in an unlawful manner; * * *."

Here the defendant, who had reason to fear the decedent because of his previous experience with him, was entitled to use reasonable force and reasonable means to ward off any threatened harm to his person, and if this could have been accomplished by merely displaying the weapon, the drawing of the weapon could be considered by the jury as a proper and lawful act.

■ With reference to the requested instruction on excusable homicide involving the accidental features of the case, this court said in the Baker case:

" * * * The defendant, by insisting upon his defense of accidental or excusable killing, did not thereby waive the question of manslaughter, either voluntary or involuntary, and did not make unnecessary the giving of instructions thereon. * * *"

THIRD QUESTION TO BE DETERMINED.

*Was the instruction as given on self-defense proper?*
This question is answered in the negative.

■ The court's instruction on self-defense was numbered 12 and is as follows:

"You are further instructed that the right of self-defense is based upon the law of necessity, *and is only given in emergencies* to persons who are attacked and who do not bring on the difficulty themselves which re-

sults in the homicide, and to whom it may reasonably appear that their lives are placed in jeopardy or their persons in danger of great bodily injury, to defend themselves; that this right is based upon what reasonable persons, having due regard for human life would do under similar circumstances, and the actions of the defendant in this case must be measured by this rule.

"If, from all the facts and circumstances in evidence in this case, you believe that the defendant, acting as a reasonable man would under all the circumstances in evidence, had cause to fear that his life was in immediate danger, or that he was in danger of receiving immediate great bodily injury at the hands of the deceased, and if you further believe that he was acting through such reasonable fear and through honest conviction that such danger was immediately then pending or about to be inflicted by the deceased, and he shot and killed the deceased to prevent such impending danger of death or great bodily harm, then he would not be held liable though he might be mistaken as to the extent of the danger or whether it was real or only apparent.

"In order to properly apply these principles of self-defense, so as to determine the guilt or innocence of the defendant, you may, so far as possible and in your power, place yourselves in the same position in which the defendant was placed, as shown by all the testimony, and surround yourselves by the same circumstances by which he was surrounded, and then say whether, acting as a reasonable person with a proper regard for human life, you would have done as he did." (Emphasis supplied.)

The first paragraph of this instruction does not correctly state the law under a plea of self-defense, and its submission to the jury was error.

It is not clear what the court meant by stating that the instruction on self-defense is "only given in emergencies." It is not correct to state that the right to defend oneself is *"given"* (by law, natural or statutory) only in

cases of emergency. We know of no authority to that effect. Thus the statement could only be confusing to the jury.

Also that portion of the first paragraph limiting the right of self-defense to persons "who do not bring on the difficulty themselves" is too broad a statement. The law is that the one invoking the right of self-defense cannot be the aggressor or assailant, but the mere fact that one has interjected himself into a crowd or into a mild situation, does not deprive him of the right of self-defense if the situation, beginning with only an argument, develops to a point where he is being subjected to or threatened with, such physical violence that he might have to resort to justifiable homicide to protect his person. The statement in the instruction that the *right* (to defend himself) is based upon what a reasonable person would do is also misleading and confusing. The *right* of self-defense is a natural right and is based on the natural law of self-preservation. Being so, it is resorted to instinctively in the animal kingdom by those creatures not endowed with intellect and reason, so it is not based on the "reasonable man" concept.

Although it is not generally the province of this court to formulate instructions, it has been stated as a good rule to couch instructions in the language of the statute so as to advise the jury of the law as it is, and is more to be desired than attempts to paraphrase the law. An instruction containing C.R.S. '53, 40-2-13-14-15, in their entirety would be considered proper, omitting the section headings and reference numbers, not essential here. The three sections taken together read as follows:

"Justifiable homicide is the killing of a human being in necessary self-defense or in the defense of habitation, property or person against one who manifestly intends or endeavors by violence or surprise to commit a known felony, such as murder, rape, robbery, burglary and the like, upon either person or property, or against any person or persons who manifestly intend and endeavor in a

violent, riotous or tumultuous manner to enter the habitation of another for the purpose of assaulting or offering personal violence to any person, dwelling or being therein.

"A bare fear of any of these offenses to prevent which the homicide is alleged to have been committed shall not be sufficient to justify the killing. It must appear that the circumstances were sufficient to excite the fears of a reasonable person, and that the party killing really acted under the influence of those fears and not in a spirit of revenge. And if the person killed was a magistrate, a police, or other public officer, it must appear also that the slayer was not the assailant, and that the person killed was not acting in the discharge of his duties.

"If a person kills another in self-defense it must appear that the danger was so urgent and pressing that in order to save his own life or to prevent his receiving great bodily harm the killing of the other was absolutely necessary. And it must appear also that the person killed was the assailant, or that the slayer had really and in good faith endeavored to decline any further struggle before the mortal blow was given."

The judgment is reversed and the cause remanded for a new trial.