**The PEOPLE of the State of Colorado, Petitioner,**

v.

**Robert Farrell WILLNER, Respondent.**

**No. 93SC248.**

Supreme Court of Colorado,
En Banc.

July 18, 1994.

Rehearing Denied Aug. 15, 1994.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John Daniel Dailey, Deputy Atty. Gen., Robert Mark Russel, First Asst. Atty. Gen., John J. Krause, Asst. Atty. Gen., Criminal Enforcement Section, Denver, for petitioner.

Gerash, Robinson & Miranda, P.C., Scott H. Robinson, Denver, for respondent.

Justice VOLLACK delivered the Opinion of the Court.

Petitioner, Robert Farrell Willner (Willner), was convicted by a jury of the offense of first degree murder, in violation of section 18-3-102, 8B C.R.S. (1986), and crime of violence, in violation of section 16-11-309, 8A C.R.S. (1986). At trial, Willner tendered a jury instruction describing the limits of a person's duty to retreat pursuant to our decision in *Idrogo v. People*, 818 P.2d 752 (Colo. 1991). The trial court refused to give the instruction to the jury, and the court of appeals, in an unpublished opinion (*People v. Willner*, No. 91CA1447 (Colo.App. Feb. 11, 1993)), reversed the trial court's decision and remanded the case for a new trial. In addition, the trial court admitted evidence of two prior similar transactions under Colorado Rule of Evidence 404(b). The court of appeals determined that this evidence was improperly admitted. *Id.*

We hold that the trial court's instruction accurately stated Colorado law on self defense and the evidence supported that instruction. We further conclude that the evidence that Willner had engaged in other, similar transactions was properly admitted. We therefore reverse the judgment of the court of appeals and remand the case to that court with directions to reinstate the trial court's judgment of conviction.

## I.

On December 10, 1990, at approximately 2:00 a.m., Steven MacDonald (MacDonald) and the victim, both employed by Credit Casualty Recovery Company, attempted to repossess Willner's 1983 Chevy Crew Cab pickup truck which was parked in Willner's driveway.[1] The victim gained entry to the pickup truck, started it without the ignition key, and backed it from Willner's driveway, while MacDonald watched him from his tow vehicle parked several houses away.

At trial, MacDonald testified that shortly thereafter he heard two loud "pops" and, alarmed, immediately drove his vehicle towards the pickup truck.[2] As he pulled close to the pickup, MacDonald saw a Caucasian

---

1. The testimony at trial established that Willner had declared bankruptcy, both personally and with respect to his business, and had failed to meet a deadline to work out an acceptable repayment plan on his pickup truck. The evidence was disputed as to whether Willner had knowledge that the pickup truck might be repossessed.

2. The evidence at trial was presented largely by several witnesses who witnessed only various portions of the incident. The facts material to this appeal are undisputed.

man—later identified as Willner—clad only in green underwear and standing about three to five feet in front of the pickup truck with an automatic pistol in his hand.[3] Willner's arm was extended and the pistol was pointed at the truck. MacDonald further saw that the victim was slumped over in the driver's seat of the pickup truck.

Willner fled the scene and the police arrived shortly after the incident and pronounced the victim dead. Several hours later, Willner went down to the police station to turn himself in and was arrested. Willner was charged with first degree murder[4] and a crime of violence.[5]

At trial, Willner testified that he left his house with his semiautomatic weapon in his hand with the belief that his pickup truck was being stolen and that, during this short time span, no thought had entered his mind about repossession. Willner admitted that he had shot and killed the victim, but claimed that the victim drove the truck toward him immediately before the shooting and he responded by running backwards and firing a warning shot into the air which hit the top of the truck.[6] Willner additionally testified that he fired several more shots in order to prevent being run over. Willner stated that he fired directly at the driver only when he saw a flash or glint from inside the vehicle. He therefore maintains that he was acting in self defense.

The testimony of several witnesses contradicted Willner's version of the incident. According to the testimony of the responding police officer and a neighbor, the pickup's "back up" lights were still on, indicating that the vehicle was in reverse. The prosecution relied on this evidence to argue that the truck did not accelerate forward and proceed in Willner's direction, as Willner claimed. Because the gunshots incapacitated the victim, it would have been impossible for him to shift the truck back into reverse after the shooting.[7] Further, a few days after the shooting, a police examination of the pickup truck revealed that the pickup truck's transmission fluid smelled burnt and, because the transmission kept slipping out of gear, the pickup's maximum speed was only a few miles per hour.

At the conclusion of the jury trial, Willner was convicted of first degree murder and sentenced to life.

On appeal, the court of appeals reversed, finding that the trial court had incorrectly refused to tender a "non-retreat" self-defense instruction, and that the court erred by admitting evidence of certain prior shooting incidents by Willner.

## II.

We begin our consideration of this case with an examination of the self-defense statute. Section 18-1-704, 8B C.R.S. (1986), defines the statutory affirmative defense of self defense. The statute provides as follows:

(1) Except as provided in subsections (2) and (3) of this section, a person is justified in using physical force upon another person in order to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful physical force by that other person, and he may use a degree of force which he reasonably believes to be necessary for that purpose.

3. Willner testified that he had been awakened from his sleep, and ran over to his bedroom window where he observed his truck starting to back away. Willner grabbed a gun from his nightstand. He did not attempt to telephone the police even though he passed several telephones on his way downstairs. He ran outside barefoot and dressed only in a pair of green underwear. Willner observed the pickup truck slowly backing down the street about 170 feet away and ran towards it.

4. § 18-3-102(a), 8B C.R.S. (1986), "Murder in the first degree [after deliberation]."

5. § 16-11-309(2)(a)(I), 8A C.R.S. (1986).

6. It is unclear whether the victim perceived this initial shot to be a warning shot.

7. The prosecution's medical expert in anatomical, clinical, and forensic pathology testified that the autopsy he performed established that the victim had died from brain injuries due to a fatal bullet wound. According to this expert, it would have been very difficult for the victim to function after receiving this fatal head wound.

(2) Deadly physical force may be used only if a person reasonably believes a lesser degree of force is inadequate and:

(a) The actor has reasonable ground to believe, and does believe, that he or another person is in imminent danger of being killed or of receiving great bodily injury[.]

. . . .

(3) Notwithstanding the provisions of subsection (1) of this section, a person is not justified in using physical force if:

(a) With intent to cause bodily injury or death to another person, he provokes the use of unlawful physical force by that other person; or

(b) He is the initial aggressor, except that his use of physical force upon another person under the circumstances is justifiable if he withdraws from the encounter and effectively communicates to the other person his intent to do so[.]

Section 18–1–704 takes into account the reasonable belief and actual belief of an individual who has exercised physical force in self defense. The innocent victim of an assault does not have to retreat before defending himself. § 18–1–704(2)(a); *Idrogo v. People,* 818 P.2d 752 (Colo.1991). Sections 18–1–704(3)(a) and (b), 8B C.R.S. (1986), govern the use of self defense by a provoker or initial aggressor. Section 18–1–704(3)(b) expressly requires that an initial aggressor retreat before physical force is justified. In *Young v. People,* 47 Colo. 352, 354, 107 P. 274, 275 (1910), we reviewed the trial court's instructions which stated in part:

"The right to self-defense is only given in emergencies [8] to enable persons who are attacked and to whom it may reasonably appear, that their lives or bodies are in danger of great bodily injury, to defend themselves; that this right is based upon what reasonable persons, having due regard for human life, would do under similar circumstances. . . .

"The jury are instructed that one who seeks and brings about a difficulty cannot shield himself under the plea of self-defense from the consequences of assaulting his adversary, however imminent the danger he brings upon himself. Self-defense is not available where defendant is not reasonably freed [sic] from fault, nor unless there is evidence tending to show that he either was or appeared to be menaced at the time by some overt act on the part of the assailant of a character to create reasonable apprehension of danger of his life or of great bodily harm."

### A.

We now turn our attention to the People's argument that the self-defense instruction given by the trial court was proper. The People assert that, because Robert Willner was the initial aggressor who did not effectively communicate his withdrawal, *Idrogo v. People,* 818 P.2d 752 (Colo.1991), does not apply to this case and therefore the court of appeals erred in its determination that Willner should have been entitled to a "retreat to the wall" instruction.[9] The defense contends that the trial court improperly instructed the jury on self-defense by including the "provocation" and "initial aggressor" concepts, claiming that the instruction given by the trial court was not supported by the evidence. The defense additionally maintains that, since the evidence raised a jury question as to who provoked the incident or was the initial aggressor, and a factual issue was raised as to whether, if Robert Willner was the "initial aggressor," he withdrew and effectively communicated that withdrawal, the

8. This court in *Vigil v. People,* 143 Colo. 328, 333–34, 353 P.2d 82, 85 (1960), disapproved of this language—that the right to self-defense is only "given in emergencies."

9. Colorado's "Retreat to the Wall" instruction reads as follows:
   Where the defendant is the initial aggressor he must, in order to rely on self-defense, have withdrawn from the affray and have communicated the desire to withdraw to his opponent. However, if the defendant was not the initial aggressor, and was where he had a right to be, he was not required to retreat to a position of no escape in order to claim the right to employ force in his own defense.
   CJI–Crim. 7:68. This instruction has been codified in § 18–1–704(3)(b), 8B C.R.S. (1986).

trial court erred in not instructing the jury on the doctrine of "no-retreat." [10]

■ The defense tendered three alternative instructions on self defense. The defense instruction 1 followed section 18–1–704(2)(a), 8B C.R.S. (1986). The defense instruction 2 expanded on section 18–1–704(2)(a) by adding that it was the prosecution's burden to disprove the affirmative defense beyond a reasonable doubt. Defendant's third rejected instruction included the "retreat to the wall" doctrine, and read in part as follows:

> When a Defendant is where he has a right to be and is assaulted by another in a way that the Defendant honestly and in good faith believes, and the circumstances being such as would induce a like belief in a reasonable man, that he is about to receive at the hands of his assailant great bodily harm, or to lose his life, the Defendant, if he did not provoke the assault, is not obliged to retreat or flee to save his life, but may stand his ground, and if necessary take human life.

The trial court rejected these instructions, and instructed the jury under the provisions of sections 18–1–704(2)(a) and (3)(a) and (b): [11]

### JURY INSTRUCTION 10

It is an affirmative defense to the crimes of First Degree Murder, Second Degree Murder, and Manslaughter that Robert Willner used deadly force because:

1. Robert Willner reasonably believed a lesser degree of force was inadequate, and

2. Robert Willner had reasonable grounds to believe, and did believe, that he was in imminent danger of being killed or of receiving great bodily injury.

However, Robert Willner was not justified in using physical force if:

1. with intent to cause bodily injury or death to another person, Robert Willner provoked the use of unlawful physical force by [the victim]; or

2. Robert Willner was the initial aggressor, except that his use of physical force upon [the victim] under the circumstances was justifiable if he withdrew from the encounter and effectively communicated to [the victim] his intent to do so, but [the victim] nevertheless continued or threatened the use of unlawful physical force.

In addition to the trial court's instruction modeled after the statutory provision of the self-defense statute, the trial court gave a separate instruction on Willner's theory of the case.

### JURY INSTRUCTION 11

The defense in this case is that Robert Farrell Willner used reasonable force in running after his truck with a gun, chasing after a person he thought to be a thief stealing his truck, and that he only used deadly physical force when, while acting on the situation as it appeared to him that evening, he had reasonable grounds to believe and did believe that he was in imminent danger of being killed or of receiving great bodily injury at the hands of the driver of the truck.

### B.

The court of appeals found that the court's instructions on the doctrines of provocation and initial aggressor were not warranted. The court of appeals found that the "evidence [was] sufficient for the jury to conclude that [Willner] was the initial aggressor in the encounter or that [Willner], intending physical harm or death to the victim, provoked the victim to commit an act of aggression by driving toward [Willner]." [12] *People v. Will-*

---

**10.** The defense further asserts that the instruction failed to advise the jury that if it were to find that Willner was not the initial aggressor, he had no duty to retreat before firing.

**11.** In considering the objections raised by the defense at the *in camera* hearing on the jury instructions, the court determined that Jury In-

struction 10 adequately covered the issues contained in Willner's tendered instructions 1, 2, and 3.

**12.** In raising the affirmative defense of self defense, the jury had to resolve whether Willner was the initial aggressor of the incident or the victim. We agree with the court of appeals that

*ner,* No. 91CA1447, slip op. at 1 (Colo.App. Feb. 11, 1993). The court of appeals further determined that,

> [s]ince the jury could have reasonably concluded from the evidence that [Willner] withdrew from the initial act of aggression, the trial court erred in refusing to instruct the jury regarding the law of nonretreat.

*Willner,* slip op. at 2.

The court of appeals therefore deemed Willner to be entitled to a new trial since "the failure to instruct on nonretreat, when applicable, deprives a defendant of the right to a possible acquittal on the ground of self-defense if the jury could have had a reasonable doubt as to whether [Willner] acted in self-defense." *Id.*

The court of appeals, citing *Idrogo v. People,* 818 P.2d 752 (Colo.1991), as authority, reversed the defendant's conviction. In *Idrogo,* we reiterated the long-established rule in Colorado, which is also the majority view in this country, that an innocent victim of assault need not retreat before using deadly force if the victim reasonably believes the use of deadly force is required. *Idrogo,* 818 P.2d at 756; *Brown v. United States,* 256 U.S. 335, 41 S.Ct. 501, 65 L.Ed. 961 (1921); *People v. Gonzales,* 71 Cal. 569, 12 P. 783

(1887); *Runyan v. State,* 7 Ind. 80 (1877); *Haynes v. State,* 451 So.2d 227 (Miss.1984); *People v. Johnson,* 75 Mich.App. 337, 254 N.W.2d 667 (1977); *Voight v. State,* 53 Tex. Crim. 268, 109 S.W. 205 (1908).[13] We held that Idrogo was entitled to an instruction explicitly explaining the doctrine of no-retreat, since the propounded instruction did not give the jury an opportunity to determine whether the defendant was the initial aggressor.[14]

#### C.

The present case is distinguishable from *Idrogo* for several reasons. *Idrogo* involved a situation in which a jury could have reasonably concluded that the defendant was not an initial aggressor or withdrew as an aggressor and communicated that withdrawal to the victim.[15] The evidence established that the defendant had repeatedly backed away from his attacker and had several times asked for his attacker to "leave [him] alone" before he resorted to deadly force. Further, the defendant's tendered instruction in *Idrogo* was modeled on the language in *Boykin v. People,* 22 Colo. 496, 504, 45 P. 419, 422 (1896).[16]

---

the evidence was sufficient to conclude that Willner was at all times the initial aggressor.

13. At common law, a person had a duty to retreat before using force to defend against an aggressor. *See People v. Watson,* 671 P.2d 973, 974 (Colo.App.1983). This common law doctrine was later modified in this jurisdiction, *Boykin v. People,* 22 Colo. 496, 45 P. 419 (1896), and now applies only to cases "where the defendant voluntarily enters into a fight or where the parties engage in mutual combat, or where the defendant, being the assailant, does not endeavor in good faith to decline any further struggle before firing the fatal shot, and possibly to other similar cases." *Harris v. People,* 32 Colo. 211, 218–19, 75 P. 427, 430 (1904).

14. In *Idrogo,* the trial court instructed the jury that Idrogo was entitled to use deadly force if he reasonably believed a lesser degree of force was inadequate *and if the victim was committing or reasonably appeared to be committing an assault.*

The latter part of the trial court's instruction digressed from the language contained in § 18-1–704(2)(a), that a non-aggressor may use physical force, including deadly physical force, when such person believes, on reasonable grounds,

that such conduct is necessary to avoid great bodily harm.

15. The material facts in *Idrogo* provided:

> Raymond Archuleta ... appeared on the scene, began to walk rapidly toward Idrogo, and asked "Are you messing with my bro?" Idrogo and Babb continued to slowly back away, and Idrogo displayed the knife to [Archuleta], stating "Leave us alone. We're getting out of here. We don't want trouble." [Archuleta] nevertheless continued to walk rapidly toward the couple, raised his fists, and ultimately caught up with them. A fight ensued, during which [Archuleta] struck Idrogo and Idrogo stabbed [Archuleta] once. [Archuleta] died a short time later.

*Idrogo v. People,* 818 P.2d 752, 753 (Colo.1991).

16. In analyzing Idrogo's tendered instruction we stated:

> [T]he latter portion of Idrogo's tendered instruction, suggesting that a person acting in self-defense may turn aggressor, pursue a withdrawing initial aggressor and in some circumstances use deadly physical force to disarm or disable such initial aggressor, is not supported by our case law. While similar language appears in *Boykin,* that dicta is related to the

In contrast, in this case, Willner, with a gun in his hand, ran down the street chasing the truck which the victim was slowly backing towards the "exit" street, located three or four houses away from Willner's home. According to Willner's testimony at trial, the pickup truck reversed its direction and accelerated towards him [17] and Willner responded by running backwards and firing a warning shot into the air which hit the top of the truck. Willner further testified that he fired several more rounds directly at the truck as the truck continued coming towards him. The record does not support his contention that Willner was not the initial aggressor or that he withdrew and communicated his withdrawal to the victim.[18]

The trial court's self-defense instruction is the precise instruction warranted by *Idrogo*. The trial court gave an accurate and comprehensive statement to the jury of the law of self defense; the instruction closely tracked the text of the statute and was appropriate under the facts of this case. The trial court's self-defense instruction incorporated the essential elements of Willner's tendered jury instruction and adequately apprised the jury of the defendant's reliance on the concept of no-retreat.

We therefore hold that the trial court's instruction as given accurately stated the law of this jurisdiction, and adequately covered the essential points of law supported by the evidence in the case. Accordingly, the trial court properly instructed the jury on the law of self defense.

## III.

Willner contends that the trial court erred in admitting certain evidence that he had previously engaged in other, similar transac-

tions. Willner contends that this evidence was improperly admitted under Colorado Rule of Evidence 404(b) [19] and was, in any event, unfairly prejudicial to his case. Willner contends that the "other acts" evidence concerned two factually dissimilar incidents which did not relate to any material fact: (1) Willner did not shoot at anyone or attempt to directly cause bodily injury through the use of a firearm on either of the prior occasions, and (2) these two prior incidents did not have any logical relevance in proving intent or "after deliberation." Willner further argues that the trial court's focus on Willner's "reservoir of knowledge" amounted to the trial court's admitting "other acts" evidence based on a theory that an accused has not learned from past experience, that is, "Having done it before, he'd do it again."

Prior to trial, at a hearing on the People's motion to admit evidence of other acts, the People moved for admission of three instances of "other acts" evidence for the purpose of showing deliberation and intent. Defense counsel contested the admissibility of these acts, alleging that the acts only tend to show a propensity to use deadly force without justification, which is the equivalent of showing bad character. After a hearing on the motion, the trial court issued a written order in which it considered the issues raised by CRE 403 and CRE 404(b), and ruled that two of the three acts were admissible to establish Willner's state of mind during the killing.

The trial court ruled the following two "other acts" evidence as admissible:

■ **(1) *March 9, 1981, "Van Repossession"*:** In the spring of 1981, a dispute arose between Willner and the owner of the body shop who had contracted to do certain work

---

circumstances of that case and has reference to the duty of police officers to disarm persons suspected of committing crimes. While the duty of no retreat has been extended generally to non-aggressors, the same may not be said for the right to pursue an initial aggressor who has withdrawn from the fray.
*Idrogo*, 818 P.2d at 755–56 (citation omitted).

**17.** Willner testified that "[i]t was like I became the chased instead of the chaser." This statement is the only evidence supporting Willner's claim that he had appropriated a victim status.

**18.** The evidence elicited at trial showed that the pickup truck's "back up" lights were still on, indicating that the vehicle was in reverse, and that the victim received a fatal bullet wound to the brain which immediately incapacitated him and made it virtually impossible for him to be able to shift the truck back into reverse after the shooting.

**19.** Colorado Rule of Evidence 404(b) is identical to its federal counterpart, Federal Rule of Evidence 404(b).

on Willner's van. Willner stopped payment on a check for $2,000 worth of body work on his van. On March 9, 1981, four members of the shop alerted the police that they were going to repossess the van. While in the process of doing so that night, Willner ran out of his apartment with a handgun and fired several shots to prevent the repossession.[20] No one was injured, and the police thereafter arrived and issued Willner a summons for discharging a firearm.

(2) *December 4, 1989, "Christmas tree incident"*: Willner, who was operating a Christmas tree lot, chased after the person in a van who had stolen a Christmas tree. Willner shot at the tires and fired a total of six shots at the van.[21] An undercover police officer, who observed the whole incident, took all involved into custody. Willner was issued a summons and complaint for reckless endangerment.

The trial court applied the four-part analysis developed in *People v. Spoto*, 795 P.2d 1314 (Colo.1990), for determining the admissibility of "other acts" evidence in a criminal action. Based on this analysis, the trial court ruled that the similar transaction evidence was admissible under CRE 404(b). CRE 404(b) prohibits the admission of evidence to prove that a person acted in conformity with a character trait. CRE 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

■ Under *Spoto*, such evidence is admissible only if (1) the evidence relates to a material fact; (2) the evidence has logical relevance in that the evidence adds to the probability that the material fact is true; (3) the logical relevance of the evidence does not depend on an intermediate inference that the litigant has a bad character, which would be employed to support a further inference that

the litigant acted in conformity with his bad character; and (4) the probative value of the evidence is not substantially outweighed by the evidence's prejudicial impact.

In the present case, the trial court, following the guidelines set forth in *Spoto*, first found that the "other acts" evidence related to a material fact in this case, that being whether Willner acted intentionally after deliberation rather than in a hasty or in an impulsive manner on December 10, 1990. Next, the trial court found that the evidence tended to make the existence of the charged state of mind in this case (an intentional act committed after deliberation) more probable. The court then found that Willner's prior conduct was logically relevant to Willner's state of mind and his intent at the time of the shooting. Finally, the trial court found that the evidence was independent of an intermediate inference of bad character and that the probative value of this evidence, in assisting the jury to analyze Willner's state of mind, outweighed the danger of unfair prejudice.

On appeal, the court of appeals ruled that the similar transaction evidence was improperly admitted to show Willner's propensity to use firearms, and that it had no independent relevance to any purpose for which it properly could be admitted under CRE 404(b). We disagree.

A trial court has substantial discretion in deciding the admissibility of a similar transaction, and only where there is an abuse of discretion will that ruling be disturbed. *People v. Ibarra*, 849 P.2d 33, 38 (Colo.1993).

The similar transactions evidence was offered for the limited purpose of proving Willner's intent, and that he did not act impulsively, but rather intentionally after deliberation. The similar transactions evidence shed light on a disputed issue, Willner's intent, independent of Willner's character.

In *People v. Jones*, 635 P.2d 904, 907 (Colo. App.1981), the court of appeals ruled that, when prior acts of violence are admissible to show a pertinent character trait of the victim from which it may be inferred that he was

---

**20.** The evidence was in conflict as to whether the gun was pointed at the shop owner and his cohorts or whether the gun was fired in the air.

**21.** There was no evidence that Willner had shot at any of the persons in the car.

the initial aggressor, that trait may be shown by specific instances of past conduct.

Under Federal Rule of Evidence 404(b), evidence of past conduct is admissible to prove knowledge. *See, e.g., United States v. Record,* 873 F.2d 1363, 1372–76 (10th Cir. 1989). In *United States v. Owen,* 15 F.3d 1528 (10th Cir.1994), the government sought to prove that the defendant's plan to collect political contributions from companies and employees under his control showed his knowledge of the tax laws and laws regarding political contributions by corporations and a willful attempt to avoid limitations imposed by those laws. The Tenth Circuit, in admitting the similar acts evidence, determined that defendant's knowledge of reimbursements to political contributors and of the manner in which these transactions were recorded in corporate records was probative of his knowledge that the statements contained in the returns were false.

We hold that the trial court's decision to admit the evidence satisfies all four prongs of the *Spoto* analysis. Willner's intent was a material issue in this case, given that it bore on the issues of self defense and premeditation. The prior acts are also logically relevant, in that they make it more probable that Willner acted with criminal intent in shooting the victim. The similar transactions appear to be logically relevant, independent of the inference that they demonstrate that the defendant has a bad character. Although evidence that the defendant had fired his weapon in public places on two prior occasions may be regarded as evidence of bad character, this inference is mitigated by the fact that no mention was made of any criminal proceedings or arrests, even though the police were called to both scenes.[22] Finally, the

trial court determined under Colorado Rule of Evidence 403 that the probative value of this evidence, in assisting the jury to analyze Willner's state of mind, outweighed the danger of unfair prejudice.[23] The trial court has broad discretion to determine whether the probative value of the evidence outweighs its prejudice to the defendant. *Ibarra,* 849 P.2d at 38.

## IV.

Accordingly, we conclude that the trial court accurately stated Colorado law on self defense and the evidence supported that instruction. We further conclude that the trial court properly admitted the similar transactions evidence. We therefore reverse the judgment of the court of appeals and remand the case to that court with directions to reinstate the trial court's judgment of conviction.

Justice SCOTT dissents.

Chief Justice ROVIRA does not participate.

Justice SCOTT dissenting:

Because I agree with the court of appeals' analysis as to the propriety of the trial court's jury instruction in this case, I respectfully dissent from the majority opinion.

*Idrogo* requires that "where the record contains any evidence tending to establish the defense of self-defense, the defendant is entitled to have the jury properly instructed with respect to that defense." *Idrogo v. People,* 818 P.2d 752, 754 (Colo.1991) (citations omitted). *Idrogo* also establishes that when there is such evidence adducing a defense of self-defense—however slight—the statutory jury instructions relating to that

---

22. In *People v. Snyder,* 874 P.2d 1076 (Colo. 1994), in evaluating the *Spoto* analysis performed by the trial court, we stated that, "almost by definition, similar transaction evidence will suggest bad character and action in conformity therewith. The third prong of the *Spoto* test does not demand the absence of the inference but merely requires that the proffered evidence be logically relevant independent of that inference." *Id.,* at 1080. Although the inference of action in conformity with bad character will unavoidably be present whenever similar transaction evidence is admitted, the prosecution may not exploit that

inference but must restrict its use of the evidence to the purposes for which it was admitted. This issue is not before us in this case.

23. Colorado Rule of Evidence 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence.

defense must adequately apprise the jury of the law of self defense from *the standpoint of the defendant. Id.* To satisfy this standard, the trial court is required to "tailor [the self-defense] instructions to the particular circumstances of a given case...." *Id.* (citations omitted).

It is clear that if these principles were faithfully applied to the present case, Willner would be entitled to the non-retreat self-defense jury instruction that was rejected by the trial court. The majority attempts to distinguish *Idrogo* from the present case, however, on the ground that in *Idrogo,* the defendant was found to be the non-aggressor or the innocent victim of assault, inasmuch as the evidence in that case established that "the defendant had *repeatedly* backed away from his attacker and had *several times* asked for his attacker to 'leave him alone.'" Maj. op. at 24 (emphasis added). Evidently, that the defendant in *Idrogo* was so persistent in retreating conveys some legal significance that frankly, I am unable to appreciate.[1]

Some of the evidence adduced at Willner's trial tended to suggest that he retreated "by running backwards and firing a warning shot into the air," and thereafter by "fir[ing] several more shots in order to prevent being run over," maj. op at 21. The majority concludes, however, that a finder of fact could not reasonably infer from this evidence that Willner was fleeing from the victim, and that his *actions* conveyed, or "communicated" such a retreat. This conclusion is not warranted in light of the context of this case. Given that, according to Willner's testimony, he believed the victim was driving straight at him in the truck, it strains common sense to expect Willner to be able to *verbally* communicate an intention to retreat under such circumstances.

I should also point out that I find the majority's contention that the trial court's self-defense instruction "incorporated the essential elements of Willner's tendered jury instruction and adequately apprised the jury of the defendant's reliance on the concept of no-retreat," maj. op. at 25, to be inconsistent with the standard enunciated in *Idrogo. Idrogo* requires that in order to assure that the jury is adequately apprised of the non-retreat concept, the jury instruction must be tailored to the particular circumstances so as to take into account the *defendant's perspective.*

What concerned us in *Idrogo* is that without a proper instruction on the applicable law of self defense, a defendant might be deprived of the right to an acquittal on self defense grounds; this is the basis for such a low threshold in *Idrogo.* Again, that threshold is "*any evidence* tending to establish the defense of self defense." Thus it is our function in the present case to determine whether the record contains *any measure of evidence* that would tend to establish that defense, rather than to expropriate an area reserved for the finder of fact, and dismiss evidence we find lacking in force. Because I believe the majority is unconvincing in its attempt to distinguish *Idrogo* from the present case, and that it also improperly weighs and repudiates the credibility of Willner's evidence implying retreat, I respectfully dissent. Because I would affirm the court of appeals and remand for a new trial on this issue, I do not address the evidentiary issue.

---

1. Still emphasizing this curious "extent of retreat" theory, the majority points out that there was only *one* statement "supporting Willner's claim that he had appropriated a victim status." Maj. op. at 25 n. 17.