### STATE v. I. W. DUNNING.

(Filed 12 March, 1919.)

**1. Criminal Law—Assault—Deadly Weapon—Obstructing Justice—Assisting Arrest—Sheriffs—Constables.**

An authorized officer of the law in arresting an offender may use such force, the degree of which is largely within his own judgment, as is necessary to accomplish his purpose; and when withstood, and his authority and purpose made known, he may use the force necessary to overcome resistance, to the extent of taking human life if that be required for the proper and efficient performance of his duty, without criminal liability, unless the force has been excessively and maliciously used or to such degree as amounts to a wanton abuse of authority; and this applies whether the offense charged be a felony or misdemeanor, the governing principle being based on the unwarranted resistance to lawful authority and not dependent on the grade of the offense.

**2. Same—Evidence.**

Where an authorized officer of the law is indicted for an assault with a deadly weapon, a pistol, in arresting the prosecuting witness, and there is evidence tending to show that the prosecutor was a dangerous man, terrorizing the town, and the officer made an endeavor to arrest him and was acting under a proper warrant, which he previously made known to the prosecutor, but the latter came forward, threatening to cut him with an open knife and using abusive language, whereupon the officer shot him, though a way for retreat was open for him : *Held*, the evidence, if accepted by the jury as true, is sufficient for an acquittal, the rule as between individuals not applying to an officer acting under a warrant commanding him to make the arrest.

APPEAL by defendant from *Kerr, J.,* at the August Term, 1918, of BERTIE.

This is an indictment for an unlawful assault with a deadly weapon on one C. T. White while defendant, as constable and chief of police of the town of Aulander, was endeavoring to arrest the said prosecutor, C. T. White, for disorderly conduct in breach of the criminal law.

On the trial the defendant testified in his own behalf, and at the close of all the evidence the court charged the jury as follows:

"Gentlemen of the Jury, if you believe the evidence of the defendant L. W. Dunning, himself, I charge you that he is guilty, and if you so believe it, you will say guilty for your verdict."

Verdict of guilty. Judgment, and defendant excepted and appealed.

*Attorney-General Manning, Assistant Attorney-General Nash and Winborne & Winborne for the State.*

*Winston & Matthews and Alex. Lassiter for defendant.*

HOKE, J. There was evidence on the part of the State tending to convict the defendant, but the same does not accompany the record as no exception is made concerning it.

For the defense, I. W. Dunning, a witness in his own behalf, testified as follows:

I am the defendant. I have lived near and in Aulander, Bertie County, all my life. I am now twenty-four years old. Some three years ago I moved to Aulander to be near a physician for treatment. I went to Norfolk and underwent an operation and came back to Aulander. I have not been strong since then. The commissioners of the town of Aulander elected me constable and chief of police of the town. There was no other constable of the town nor any other policeman. I was the only one. I have known C. T. White all my life. He was then living in Aulander and had been living there a number of years. His reputation was that when under the influence of liquor he was a desperate and violent man. I know that of my own knowledge, because I had frequently seen him in that condition. He had been indicted for repeated assaults and for cutting people, and had been convicted. At the May election of this year in Aulander I was reelected constable by the people of the town. On the day in question, about 4 o'clock in the afternoon, complaint was made to me that C. T. White was drunk on the street, violently noisy, and profane in the presence of the public and of ladies passing on the street. I went up the street and found him at the main street crossing of the town, within a few yards of the postoffice, in the heart of the business section of the town and of the bank, and in the very center of the business part of the town. I went up to him. He had an open knife in his hand and was noisy and cursing. I ordered him to cease cursing and advised him to go home. I did not want to have to put him in the lockup, and thought I could get him quiet. He did quiet down for a few moments and came up to me and said he wanted me to give him his liquor. He claimed that he had been to Kelford and brought back two quarts of liquor, and said I had taken it. I told him I had not done so. He demanded that I let him search me, and to satisfy him, I did so. He felt in all my pockets until he came to the one in which I had my pistol, as I was then on duty. I told him he could not go in that pocket. Then he began to curse and abuse me and called me a most foul and loathsome name (too foul for this record). I backed back from him. He had me by the hand and was attempting to cut me. I was trying to arrest him.

STATE *v.* DUNNING.

This kept up for several minutes. Finally the mayor came up and quieted him down. Later he went in the barber shop and commenced raising a row and cursing Mr. Early, who was in the barber shop. Early finally got him down on the floor. I went to arrest him, and Early and his relatives said if I would let him alone they could get him to go home. He was quiet for but a moment, and came out in the street and commenced cursing Early and myself and threatened to kill us both. He had his open knife in his hand. I dodged about the town to keep out of his way. He completely terrorized the town. All the above occurred about three to four hours before I shot him. People came to me and complained, and finally about 10 o'clock Mr. A. T. Castellow, the mayor of the town, brought me a warrant charging disorderly conduct or a misdemeanor for the arrest of C. T. White, and told me to go at once and arrest him and bring him before him. During the early part of the evening and again after I got the warrant I called on several persons to go with me to assist in making the arrest. They all declined because they said they knew his desperate and dangerous character when under the influence of liquor, and they did not propose to get cut. I finally got a man to go with me. Then White was passing down the street with one Cox and going in the direction of the Cox place of business—his restaurant and pool room. I heard him cursing and threatening to kill me and Early; he was violent, cursing and noisy. He went in the Cox place of business and took a seat by the stove. It was a store some seventy feet deep. In the back was a pool room. Some young boys were there playing pool. The stove was in the middle of the house between the counters and about twenty feet from the door. I went in with my warrant in my hand. I then had my pistol in my pocket, and had not taken it out during the day or night. I had my hand on my pistol, which was in my hip pocket. I walked within ten or twelve feet of White and said, 'I have a warrant for you; consider yourself under arrest.' He got up with his open knife in his hand, and I said, 'Put up your knife and consider yourself under arrest.' He said, 'Damn you and your warrant, too; take your hand off your gun.' I again told him I had the warrant and to consider himself under arrest. He again replied, 'Damn you and your warrant, both; take your hand off your gun.' He then advanced towards me about one step with his knife in his hand and drawn back in the attitude of striking. He did not get in striking distance of me; an open door opening on the street was behind me and there was nothing to keep me from going out of it. If I had stepped out of this door he could not have hurt me, but I did not go out of door because I did not want to run. The warrant I had for his arrest charged disorderly conduct or a misdemeanor." And on this evidence we are of opinion that there was error in holding

36—177

the defendant guilty as a conclusion of law. It is a principle very generally accepted that an officer, having the right to arrest an offender, may use such force as is necessary to effect his purpose, and to a great extent he is made the judge of the degree of force that may be properly exerted. Called on to deal with violators of the law, and not infrequently to act in the presence of conditions importing serious menace, his conduct in such circumstances is not to be harshly judged, and if he is withstood, his authority and purpose being made known, he may use the force necessary to overcome resistance and to the extent of taking life if that is required for the proper and efficient performance of his duty. It is when excessive force has been used maliciously or to such a degree as amounts to a wanton abuse of authority that criminal liability will be imputed. The same rule prevails when an officer has a prisoner under lawful arrest and the latter makes forcible effort to free himself; and, in this jurisdiction, the position holds whether the offense charged be a felony or a misdemeanor, the governing principle being based on the unwarranted resistance to lawful authority and not dependent, therefore, on the grade of the offense.

These views are in accord with numerous decisions of our Court in which the questions presented were directly considered as in *S. v. Sigman,* 106 N. C., 728; *S. v. McMahan,* 103 N. C., 379; *S. v. Pugh,* 101 N. C., 737; *S. v. McNinch,* 90 N. C., 695; *S. v. Garrett,* 60 N. C., 144; *S. v. Stallcup,* 24 N. C., 50. In *S. v. Sigman* the principle is stated and approved as follows:

"If an officer is resisted in making an arrest he may use that degree of force which is necessary to the proper performance of his duty; and after an accused person is arrested, the officer is justified in the use of such force as may be necessary, even to taking life, to prevent his escape, whether the offense charged is a felony or misdemeanor."

In *S. v. McNinch:* "A police officer, in arresting one for violating a city ordinance, was indicted for an assault. The prosecutor alleged that the force used was excessive, and the judge charged the jury if such was the case the defendant was guilty, but failed to call their attention to the good faith in which the officer claims to have acted: *Held,* error. The amount of force necessary to make the arrest is left to the judgment of the officer when acting within the scope of his general powers and actuated by no ill-will or malice." In *S. v. Garrett* it was held, among things, "That where a defendant, in a State's warrant charging a misdemeanor, put himself in armed resistance to the officer having such warrant, and the officer, in an attempt to take the defendant, slew him, without resorting to unnecessary violence, it was held that he was justified." In *Sigman's case,* the officer was convicted of an assault but that was because the offense, being only a misdemeanor,

the defendant was fleeing from the officer to avoid arrest, the distinction and principle applicable being stated as follows:

"But where a person charged only with a misdemeanor flies from the officer to avoid arrest, the latter is not authorized to take life or shed blood in order to make the arrest. Under such circumstances, if he kills, he will at least be guilty of manslaughter, and he will be guilty of an assault if no actual injury is inflicted, if he uses such force as would have amounted to manslaughter had death ensued." And a similar ruling was approved in *Sossamon v. Cruse,* 133 N. C., 470, and in *S. v. Bryant,* 65 N. C., 327. In none of these was the question of resistance presented.

Considering the facts in evidence as testified to by defendant, it appears that the prosecutor, C. T. White, shown to be a violent and dangerous man when drinking, had been drunk and disorderly in the town of Aulander for several hours, intimidating its citizens, committing various violations of the town ordinances, including several breaches of the peace; that when defendant, the constable and chief of police, approached the prosecutor to arrest him, having a warrant for the purpose duly issued and of which the prosecutor was fully aware, the latter, in resistance, assaulted the officer with a drawn knife making it necessary to shoot the offender in order to subdue him and execute the process, and in view of the principles prevailing here, as stated, if this version of the occurrence is accepted by the jury, the action of the officer is fully justified. True, defendant testifies that he could have retired from the room and have avoided the difficulty "but that he did not want to run." While this at times may be the rule as between individuals, under the circumstances presented he was not required to "withdraw or to run." Charged, in a special sense, with conserving the peace and quiet of the town; having, as stated, a warrant commanding him to arrest the prosecutor, it was both his legal right and official duty to proceed according to the exigency of his writ and to exercise the force required to its efficient execution. A proper concept of the officer's duty in the premises is very well stated in one of the defendant's prayers for instructions, as follows: "The law does not require an officer with a warrant for an arrest for an offense to retreat or retire, but he must stand his ground and perform his duty; and it was not the duty of the defendant with the warrant for the arrest of the prosecutor, when the prosecutor advanced on him with the knife, if he did so, to back or retire, but it was his duty to stand and perform his duty and disarm the prosecutor, if it appeared to be necessary to do so, to effect the arrest."

On the record, there was error to defendant's prejudice and there must be a new trial of the cause.

Error.