No. 9406.

ENYART *v.* THE PEOPLE.

1. HOMICIDE—*Self-Defense—Duty of Retreat.*   Indictment for *Murder.*   The jury were told in effect, that though when the defendant was in his own place of business, attending to his own affairs, and was in no way the aggressor, a deadly and unprovoked assault was made upon him by one armed with a loaded pistol, and bent on taking his life, he was under duty to flee unless it appeared to him, and would have appeared to any reasonable person, that it was more dangerous to retreat than to fight.   *Held* a pernicious application of the common law doctrine of retreat to the wall long since abrogated in this jurisdiction.

2. *Manslaughter—Self-Defense.*   The same state of facts cannot justify the finding of voluntary manslaughter, and not guilty on the ground of self-defense.

*Department One.*

*Error to Crowley District Court, Hon. C. S. Essex, Judge.*

Messrs. SABIN, HASKINS & SABIN and Mr. HORACE N. HAWKINS, for plaintiff in error.

Hon. VICTOR E. KEYES, attorney general, and Mr. WIL-
LIAM RAMSEY, assistant, for the people.

Mr. Justice Burke delivered the opinion of the court:

SEPTEMBER 17, 1917, an information was filed against
plaintiff in error (hereinafter designated as the defendant),
charging him with the murder of one J. W. Black, on
February 25, 1917. The trial began November 13, 1917,
and on November 18 following the jury returned a verdict
finding the defendant guilty of voluntary manslaughter.
A motion for a new trial was filed and overruled, and
April 20, 1918, defendant was sentenced to the penitentiary
for a term of not less than five nor more than eight years.
From that judgment he brings error.

The defendant admitted the killing of Black, but con-
tended that the shooting was done in self-defense. The
prosecution's theory was that all of defendant's evidence
tending to establish self-defense was false and manufac-
tured. It is undisputed that ill feeling had existed between
defendant and deceased for some time, and there is evi-
dence on both sides of threats to take life. Defendant was
a witness in his own behalf, and a portion of his testimony,
which sufficiently sets forth his defense, may be abstracted
as follows:

"I am a farmer and president of the First National Bank
of Ordway. On February 25, 1917, I was living at my
ranch nine miles from town. Black came to the bank that
afternoon and asked me if I would be in town the next day.
I told him I thought I would. He said he was stopping at
the hotel and would call me up. I came into Ordway the
next morning and left my automobile at the garage. I
invariably carry a revolver with me when going away from
home. I threw it in the car that morning and took it out
when I got to Ordway. From the bank I called up Black
at the hotel. He said he would be up in a few minutes.
When he came I stepped to the door and opened it. I had
taken off my overcoat and laid it on a settee in a little ante-
room. I put the revolver in the inside overcoat pocket. I

turned the overcoat inside out and laid it down so the butt of the revolver could be seen. Mr. Black came in, and we went to the directors' room. I sat down in a chair on the west side of the table, and he took a chair on the east side. We began to talk about business matters. I had a few papers with me. He had asked me the evening before in regard to the contents of a contract and claimed he had paid twenty-three hundred and some odd dollars, and I told him I would give him the contract and if he could ever show where he had paid, I would refund the money. Something was said about some stock in a company. I owned three-fourths of it, and Mrs. Katherine Enyart (mother of Hazel Black, wife of J. W. Black) would own one-fourth. He asked if I would buy it. I told him I didn't think he had any right to sell it, and that I would make no deal with him. He kind of raised on the table and says, 'You son of a b——, I will fix you.' I saw he was drawing his gun from under his vest and I wheeled in the chair and went out the door. I had a gun on the other side. I thought he was going to shoot me. He fired at me just about the time I left the chair. I ran to my overcoat and before I got hold of it there was another explosion. Dick Potter came into the room about that time. About the time the second shot was fired I grabbed my gun. I just stepped to the door and reached there for it. I don't think with my left foot I passed the door. I wheeled and fired at Black. About that time he shot again. I returned the fire after he shot at me. I was aiming to shoot him. I was afraid he would shoot me. I shot four times at Black. He kind of faltered, but still had his gun in his hand. I advanced towards him, and kept shooting as fast as I could. After I fired the fourth shot I went back in the room where I got the gun. I told Mr. Potter to call the sheriff."

Such was defendant's version of this affray and:

"It was the duty of the court to tell the jury by what principles of law they should be guided, in the event they found the facts to be as stated by the accused." *Baird v. U. S.*, 158 U. S. 550.

Was this duty performed?

A portion of instruction No. 18 reads as follows:

"And you are further instructed that *if a person kills another in self-defense, it must appear that the danger was so urgent and pressing that in order to save his own life, or to prevent his receiving great bodily harm, the killing was absolutely necessary. And it must appear also that the person killed was the assailant, or that the slayer had really and in good faith endeavored to decline any further struggle before the* fatal shot was fired."

The words italicized are a verbatim copy of most of section 1763 M. A. S. (revised edition) 1912. The words used in the statute in lieu of "fatal shot was fired" are "mortal blow was given."

Instruction No. 19 reads as follows:

"The court further instructs the jury that the right of self-defense is based upon the law of necessity, and is only given in emergencies to persons who are attacked and who do not bring on the difficulty themselves which results in the homicide, and to whom it may reasonably appear that their lives are placed in jeopardy or their persons in danger of great bodily injury, to defend themselves; that this right is based upon what reasonable persons, having due regard for human life, would do under similar circumstances, and the actions of defendant in this case must be measured by this rule.

"If from all the facts and circumstances in evidence in the case you believe that the defendant, acting as a reasonable man would under all the circumstances in evidence, had cause to fear that his life was in immediate danger or that he was in danger of receiving immediate great bodily injury at the hands of the deceased, and if you further believe that he was acting through such reasonable fear and through honest conviction that such danger was immediately then impending or about to be inflicted by the deceased and he shot and killed the deceased to prevent such impending danger of death or great bodily harm, then he would not be held liable, though he might be mistaken as

to the extent of the danger or whether it was real or apparent."

Having read the instructions thus far, the question here naturally arising in the minds of the jurors would be, "What, in such case, was the duty of defendant if there seemed a probability of escaping the threatened danger by flight?" The very next instruction, No. 20, answers that question thus:

"If a person is violently assailed, he is not bound to retreat or flee if the assault is of such character that retreat or flight would invite danger, or of such character that a reasonable man, under all the circumstances, would be justified in believing that retreat or flight would not save him from harm at the hands of his assailant."

This, of course, is equivalent to saying:

"If a person is violently assaulted and the assault is of such character that retreat or flight would *not* invite danger, or of such character that a reasonable man, under all the circumstances, would be justified in believing that retreat or flight *would save him* from harm at the hands of his assailant, he *is* bound to retreat or flee."

Assuming that the jury believed defendant's testimony, and believed further, as they might from the evidence, that at the time he secured the revolver he could have escaped with less danger to himself than he incurred by continuing the conflict, or that a reasonable man so situated might have so believed, they were still, under these instructions, obliged to find him guilty. Such is the ancient doctrine of "retreat to the wall," but it has long since been abandoned in the Federal and most of the state courts. *Erwin v. State*, 29 Ohio St. 186, 23 Am. Rep. 733; *Runyan v. State*, 57 Ind. 80, 26 Am. Rep. 52; *Beard v. United States*, 158 U. S. 550; *State v. Carter*, 15 Wash. 121, 45 Pac. 745.

We need not, however, go outside our own jurisdiction for a definite declaration of the law on this subject:

"It was error to charge the jury  *  *  *  to the effect that, to justify homicide on the plea of self-defense, it must appear that the slayer had no possible, or at least probable,

means of escape, etc." *Babcock v. People,* 13 Colo. 515-524, 22 Pac. 817.

"As to this doctrine of retreat, it may, in general, be safely said that the tendency of the modern cases is greatly to qualify the common law rule. * * * But when a defendant is where he has a right to be * * * and is assaulted by the deceased in a way that defendant honestly and in good faith believes, and the circumstances being such as would induce a like belief in a reasonable man, that he is about to receive at the hands of his assailant great bodily harm, or to lose his life, the defendant, if he did not provoke the assault, * * * is not obliged to retreat or flee to save his life, but may 'stand his ground, and even, in some circumstances, pursue his assailant until the latter has been disarmed or disabled from carrying into effect his unlawful purpose; and this right of the defendant goes even to the extent, if necessary, of taking human life." *Boykin v. People,* 22 Colo. 496-504, 45 Pac. 419.

"But where, as here, * * . * the jury are instructed that the defendant, in every case, must retreat to the wall before he is entitled to resort to self-defense, the error is manifest." *Ritchey v. People,* 23 Colo. 314-321, 47 Pac. 272.

"The common law doctrine of retreat to the wall, as this court has said, * * * has been modified by the more recent decisions and is applicable in this jurisdiction only to such cases as where the defendant voluntarily enters into a fight or where the parties engage in mutual combat, or where the defendant, being the assailant, does not endeavor in good faith to decline any further struggle before firing the fatal shot, and possibly to other similar cases." *Harris v. People,* 32 Colo. 211-218, 75 Pac. 427.

This jury was told, in substance, that although they might believe that defendant was attending to his own business, in his own bank, though he were in no way the aggressor, though he were subjected to a deadly and unprovoked assault, by one armed with a loaded pistol, and bent upon taking his life, he was obliged to flee, unless it appeared to him, and would have appeared to a reasonable

person so situated, that it was more dangerous to run than fight. This is exactly the pernicious application of the common law doctrine of "retreat to the wall" which has been abrogated by the authorities above cited. We can not sanction a conviction in which this erroneous principle may have played a conspicuous part. True it is that the statute hereinbefore quoted as being given this jury as a part of the court's instruction No. 18, is of itself somewhat confusing. It states the law of self-defense, but it does not state the whole law. The confusion arises from the assumption that it does. It must be read in connection with, and in the light of, this court's repeated declarations on that subject.

Instructions 18 and 19 were duly excepted to and reasons therefor assigned. Some question is raised as to the exception to No. 20. The defendant requested two instructions, giving to the jury the law of self-defense under his theory of the evidence, to the effect that one attacked as he says he was is not obliged to retreat, or act upon any theory or belief as to whether the greater danger lies in flight or conflict, but may stand his ground and repel force with force. Some question is raised also as to the tender of these instructions, and as to whether defendant was entitled to an exception to the court's failure to give them. They were both marked "Covered. Refused." The question as to defendant's right to an exception to the court's refusal to give these two instructions, and his right to an exception to the giving of No. 20, need not be decided, as we are of the opinion that the instructions given, the objections and exceptions thereto, and the reasons assigned therefore, sufficiently present the question herein decided.

Other assignments of error necessary to be determined because they may arise upon a new trial are:

1. The failure of the people to call the witness Potter. Under the circumstances of this case the calling of this witness was a matter solely within the discretion of the district attorney.

2.　The giving by the court of instruction No. 33, which, after setting forth a supposed state of facts to be found by the jury, continues:

"Then you may find the defendant guilty of voluntary manslaughter, in manner and form as charged in the information—unless you find the defendant not guilty on the ground of self-defense."

As the same state of facts could not possibly justify a verdict of guilty of voluntary manslaughter and a finding of not guilty on the ground of self-defense, this portion of the instruction is necessarily erroneous.

3.　The insufficiency of the evidence.　We are of the opinion that it justified a submission of this case to the jury.

As it is not probable that the questions presented by other assignments of error will arise upon another trial, they will not now be examined.

For the reasons hereinbefore stated the judgment is reversed and the cause remanded for a new trial.

Garrigues, C. J., and Teller, J., concur.