## STATE v. J. WALL ELLIS.

(Filed 23 March, 1955.)

**1. Homicide § 27f—**

Where the evidence discloses that defendant was a wildlife protector and at the time was engaged in the performance of his duties in checking a fisherman for license to give him a citation if he had none, G.S. 113-91 (d), G.S. 113-141, G.S. 113-152, G.S. 113-157, inadvertence of the court in charging the jury that the incident under investigation did not involve defendant's discharge of official duties and the fact that defendant was an officer would not affect his right to shoot, *is held* to constitute prejudicial error.

**2. Homicide § 11—**

The doctrine of retreat as an element of self-defense has no application to a peace officer, or one clothed with the powers of such officer, while in

the performance of his duties, but to the contrary it is the duty of such officer when assaulted to stand his ground and carry through on the performance of his duties, and meet force with force so long as he acts in good faith and uses no more force than reasonably appears to him to be necessary to effectuate the due performance of his official duties and save himself from death or great bodily harm.

**3. Same—**

As bearing upon the question of excessive force, a peace officer acting in self-defense is presumed to have acted in good faith, and the court should so instruct the jury.

BARNHILL, C. J., took no part in the consideration or decision of this case.

APPEAL by defendant from *Pless, J.,* and a jury, at December Term, 1954, of AVERY.

Criminal prosecution tried upon a bill of indictment charging the defendant with the murder of Charlie Young.

When the case was called for trial, the Solicitor announced he would not prosecute the defendant for murder in the first degree, but would ask for a verdict of murder in the second degree or manslaughter, as the evidence might disclose. (*S. v. Wall,* 205 N.C. 659, 172 S.E. 216.)

The defendant, under plea of not guilty, admitted the intentional killing and assumed the burden of justification.

The homicide occurred on 5 April, 1954. The trout season opened that day. The defendant was a wildlife protector for the State of North Carolina. He had served in that capacity for about nine years. The defendant, with three other wildlife enforcement officers, had worked that day in the performance of their duties, and about 5:00 o'clock in the afternoon they came upon three men fishing in a trout stream.

The further evidence on which the defendant relies, so far as it is pertinent to decision, may be summarized as follows: The defendant and deputy protector Bailey went down to the creek to check the fishermen for creek limits and licenses. The fishermen were across the stream from the officers. The check made on the first two fishermen disclosed that one of them did not have a license. The third fisherman walked off while the other two were being checked. Thereupon the officers, in an effort to head off the third fisherman, returned to the car and drove across a bridge spanning the creek and parked side of the road near a pasture belonging to Ralph Young, brother of the deceased. Deputy Bailey walked down near the creek and was seen talking to one or more of the fishermen about 100 feet from the road. Whereupon the defendant started in the direction of deputy Bailey. The defendant's forward progress carried him near the deceased Charlie Young. When the defendant was some 75 or 80 feet from Young, who had not been seen by the defendant, Young called to

his brother Ralph, who was standing nearby, and asked if he could not get the defendant—referring to him as a s.o.b.—off his land. The defendant stopped. An exchange of words ensued. The deceased started advancing toward the defendant and said : "I can get the g— d— blue-face s.o.b. off there." The deceased continued on, walking fast, nearly running. There was a fence between the defendant and the deceased about 25 feet from the defendant. Before the deceased reached the fence he picked up a large rock and with it crossed the fence. The defendant said to him, "Don't come down here," and then pulled his pistol out of the holster. The deceased said, "I am not afraid of you or your g. d. gun either." The deceased continued on toward the defendant and when he was about 20 feet away, the defendant fired a warning shot to the left of the deceased. He continued to advance, looking "like a wild man." And when about 15 feet away, the defendant shot again, aiming at his arm. The deceased "twisted around" but did not stop. When he was about 6 feet away, he started to draw back with the rock, whereupon the defendant, as he put it, being "in fear that he would kill me with the rock," shot the deceased in the face, inflicting the wound that caused death.

Prior to this time the defendant had given the deceased a citation for violating the game law and had caused a warrant to be issued for him. The deceased had threatened to kill the defendant. There was also evidence that the deceased had the general reputation of being a dangerous and violent man, to the knowledge of the defendant. The deceased was about 45 years of age and weighed more than 225 pounds. The defendant was 64 years of age.

The State's evidence, omitted herefrom as not being pertinent to decision, contradicts vital phases of the defendant's evidence of justification.

The jury returned a verdict of guilty of manslaughter, and from judgment pronounced, directing that the defendant be committed to the State's Prison for a term of not less than four nor more than seven years, he appeals, assigning errors.

*Attorney-General McMullan and Assistant Attorney-General Moody for the State.*

*Charles Hughes, Robert Lacey, G. D. Bailey, and W. E. Anglin for defendant, appellant.*

JOHNSON, J. The trial court instructed the jury in part as follows :

"Going further with the law of this case, gentlemen of the jury, the Court instructs you that upon this occasion that Mr. Ellis, the defendant, was in the discharge of his duties as a State Wildlife Protector, and under the statute is permitted to enter upon privately owned land for the purpose of checking fishing licenses and things of that sort, and that he

was not, therefore, upon this occasion a trespasser upon the lands of Mr. Ralph Young, the owner of it, *and on the other hand, gentlemen of the jury, inasmuch as the incident we are investigating did not involve the discharge of his official duties, the fact that he is an officer would not enter into that part of it; that is, gentlemen of the jury, under the circumstances he had no more right to shoot, but did have the same right to shoot as a private citizen, but he is not cast in the role of trespasser, but he had a right to be where he is; so that, in so far as that phase of the case is concerned, gentlemen of the jury, it would be the same as if the incident had taken place out upon the highway where two men had met up with each other."* (Italics added.)

The defendant under Exception No. 63 assigns as error the portion of the charge appearing in italics. The assignment appears to be well taken. The inadvertence of the court in telling the jury "the incident we are investigating did not involve the discharge of his (defendant's) official duties," was inexact, contradictory of the instruction just given, and calculated to prejudice the defendant in his right of self-defense, as was the further instruction that "the fact that he is an officer would not enter into that part of it." The evidence discloses the defendant was engaged in the performance of his official duties, *i.e.,* on his way to check a fisherman for license and, if he had none, to give him a citation. These acts he was empowered by law to perform. G.S. 113-91 (d) ; G.S. 113-141; G.S. 113-152; G.S. 113-157. And being in the performance of his official duties, the doctrine of retreat as an element of self-defense (*S. v. Bryant,* 213 N.C. 752, 197 S.E. 530) had no application to the defendant's situation. This is so for the reason that a peace officer, or one clothed with the powers of such officer, who is assaulted or obstructed or interfered with while in the lawful performance of his duties is not required, or ordinarily permitted, to retreat and thus leave the would-be lawbreaker to work his will and frustrate the orderly enforcement of the law. *S. v. Garrett,* 60 N.C. 144; *S. v. Dunning,* 177 N.C. 559, 98 S.E. 530; 26 Am. Jur., Homicide, section 154. On the contrary, it is his duty when assaulted to stand his ground, carry through on the performance of his duties, and meet force with force so long as he acts in good faith and uses no more force than reasonably appears to him to be necessary to effectuate the due performance of his official duties and save himself from death or great bodily harm. *S. v. Dunning, supra;* 40 C.J.S., Homicide, section 137. Also, as bearing on the question of excessive force, a peace officer acting in self-defense is presumed to have acted in good faith (*S. v. Pugh,* 101 N.C. 737, 7 S.E. 757), and the jury should be so instructed. *S. v. Dunning, supra; S. v. McNinch,* 90 N.C. 695. Accordingly, the defendant was in no sense, as the court inadvertently told the jury, in the same

situation "as if the incident had taken place out upon the highway where two men had met up with each other."

It would seem that the challenged instructions must have weighed too heavily against the defendant. We conclude he is entitled to another trial. It is so ordered. This being so, we refrain from reviewing the remaining assignments of error.

New trial.

BARNHILL, C. J., took no part in the consideration or decision of this case.