The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

Lauren WATSON, Defendant-Appellant.

No. 81CA0878.

Colorado Court of Appeals, Div. III.

March 31, 1983.

Rehearing Denied April 28, 1983.

Certiorari Denied Sept. 26, 1983.

J.D. MacFarlane, Former Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Joel W. Cantrick, Sol. Gen., Maureen Phelan, Asst. Atty. Gen., Duane Woodard, Atty. Gen., Norman S. Early, Jr., Dist. Atty., Designated Counsel, Brooke Wunnicke, Chief Appellate Deputy Dist. Atty., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Gerald E. Piper, Deputy State Public Defender, Denver, for defendant-appellant.

KELLY, Judge.

The defendant, Lauren Watson, was convicted of second-degree assault. The only issue on appeal is whether the trial court erred in refusing the defendant's tendered instruction advising the jury that a defendant is not required to retreat to the wall in order to rely on self-defense. We affirm.

Late on a September afternoon in 1980, defendant went with his young son to a recreation center where the boy indicated he would like to watch his father play volleyball. Since the volleyball court was in use, Watson went into the weight room to do some weightlifting until the gymnasium was available. Melvin Nelson had been using the weight bench which Watson chose to use, and a heated argument between them ensued about the use of the equipment. Watson testified that Nelson had a curl bar in his hand when he said to Watson, "I got something to make you get out of my face." Nelson denied having the curl bar and denied that he had threatened Watson during this episode in any manner.

Nevertheless, according to Watson's account, he left the recreation center and went out to his car in the parking lot. He waited there a few moments expecting to see his son follow, but when the youngster did not appear, Watson drove to a nearby shopping center where he telephoned to the recreation center several times in an effort to locate his boy. Each time he telephoned, however, the line was busy. Twenty to 25 minutes having elapsed, he returned to the recreation center parking lot and parked his car.

Arming himself with a gun which he carried in his car, Watson wrapped the weapon in his windbreaker and went into the recreation center to look for his boy. Watson testified that, as he walked down the corridor off which the weight room was located, he heard Nelson yell to him, "I told you to get the fuck out of my face. I am going to get you," or "I'm going to kill you," or words to that effect. When Watson turned in that direction, Nelson, with a curl bar in his raised hand as if to strike Watson, took a step toward him. Watson thereupon fired his weapon, striking Nelson in the arm, the force of which threw Nelson to the floor.

There was no substantial disagreement among the witnesses that the two men were between three and six feet apart at the time of this confrontation. Again, Nelson's version of the encounter was that he did nothing to provoke the shooting and that he neither threatened Watson with injury nor had a weapon in his possession.

Concerning the affirmative defense of self-defense and the circumstances in which physical force may be used, the trial court instructed the jury substantially in the language of § 18–1–704(1), C.R.S.1973 (1978 Repl.Vol. 8), and § 18–1–704(2)(a), C.R.S. 1973 (1982 Cum.Supp.). In addition, the jury was told that:

"[A] person is not justified in using physical force if:

. . . .

he is the initial aggressor, except that his use of physical force upon another person under the circumstances is justifiable if he withdraws from the encounter and effectively communicates to the other person his intent to do so, but the latter nevertheless continues, or threatens the use of unlawful physical force." Section 18–1–704(3)(b), C.R.S.1973 (1978 Repl.Vol. 8).

There is no statutory provision regarding the duty of a person to retreat before countering the use of force with force. The doctrine derives from the common law, and its scope and proper application have been the subject of debate since the sixteenth century. See R. Perkins & R. Boyce, Criminal Law (3rd ed. 1982).

We do not agree with the defendant's contention, however, that the jury should have received particular instruction on the duty of a person to retreat before countering the use of force with force. See People v. Dillon, 655 P.2d 841 (Colo.1982). For nearly a century, the Supreme Court has

adhered to the view that one who has provoked or brought on the difficulty, or is not reasonably free from fault, being the assailant, cannot invoke the plea of self-defense. *See People v. Favors,* 192 Colo. 136, 556 P.2d 72 (1976) and *Bush v. People,* 10 Colo. 566, 16 P. 290 (1888). If the defendant is the initial aggressor, he must, in order to rely upon self-defense, have withdrawn from the affray and have communicated the desire to withdraw to his opponent. *See Harris v. People,* 32 Colo. 211, 75 P. 427 (1904). This case law has been codified in § 18–1–704(3)(b), C.R.S.1973 (1978 Repl.Vol. 8), and the jury was properly so instructed.

Even if we were to rule that the jury should have been instructed on the circumstances under which a defendant is *not* required to retreat to the wall, we would, nevertheless, conclude that the evidence here does not present a situation requiring the giving of such instructions. *See People v. Favors, supra.* Moreover, in view of the trial court's instruction on the defendant's theory of the case, there was no reversible error.

Judgment affirmed.

VAN CISE and KIRSHBAUM, JJ., concur.