**Anthony M. IDROGO, Petitioner,**

v.

**The PEOPLE of the State of Colorado, Respondent.**

**No. 90SC332.**

Supreme Court of Colorado, En Banc.

Oct. 7, 1991.

David F. Vela, State Public Defender, Martin J. Gerra, III, Deputy State Public Defender, Denver, for petitioner.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John Daniel Dailey, Deputy Atty. Gen., Robert Mark Russel, First Asst. Atty. Gen., John J. Krause, Asst. Atty. Gen., Denver, for respondent.

Justice KIRSHBAUM delivered the Opinion of the Court.

Appellant Anthony M. Idrogo was convicted by a jury of the offenses of reckless manslaughter, in violation of section 18–3–

104(1)(a), 8B C.R.S. (1986),[1] and crime of violence, in violation of section 16–11–309, 8A C.R.S. (1986). The jury also found Idrogo to be a habitual criminal, in violation of section 16–13–101(2), 8A C.R.S. (1986). At trial, Idrogo tendered a jury instruction describing the limits of a person's duty to retreat when attacked by another person. The trial court refused to give the instruction to the jury, and the Court of Appeals affirmed the trial court's decision in the unpublished opinion of *People v. Idrogo*, No. 87CA1250 (Colo.App. March 22, 1990) (not selected for official publication). Having granted Idrogo's petition for certiorari to consider the propriety of the trial court's ruling, we reverse and remand with directions.

## I

On the evening of September 6, 1985, while Idrogo and a companion, Carol Babb, were walking toward their Colorado Springs home, Idrogo entered a liquor store to purchase cigarette rolling papers.[2] Raymond Archuleta and his brother, William, were inside the store. William, who was extremely intoxicated, followed Idrogo out of the store and repeatedly requested that Idrogo sell him a marijuana cigarette. Idrogo refused and told William to "leave us alone," but William repeated his request. When Idrogo and Babb began to back away from William, requesting that he leave them alone, William pursued them and insisted that Idrogo sell him some marijuana. Idrogo then removed a knife from a purse carried by Babb, showed it to William, and stated "You don't want to get cut. Just leave us alone." William stopped, and Idrogo and Babb continued to move backwards away from him.

At about that time Raymond Archuleta, who was also intoxicated, appeared on the scene, began to walk rapidly toward Idrogo, and asked "Are you messing with my bro?" Idrogo and Babb continued to slowly back away, and Idrogo displayed the knife to Raymond, stating "Leave us alone. We're getting out of here. We don't want trouble." Raymond nevertheless continued to walk rapidly toward the couple, raised his fists, and ultimately caught up with them. A fight ensued, during which Raymond struck Idrogo and Idrogo stabbed Raymond once. Raymond died a short time later. A deputy coroner testified that Raymond's death resulted from the single wound.

At trial Idrogo tendered the following instruction to the trial court at the conclusion of the evidence:

> The Defendant, if he did not provoke the assault, is not obliged to retreat or flee to save his life, but may stand his ground, and even in some circumstances, pursue his assailant until the latter has been disarmed or disabled from carrying into effect his unlawful purpose, and this right of the Defendant goes even to the extent, if necessary, of taking human life.

In rejecting this tendered instruction, the trial court stated as follows:

> [A]s far as retreating to the wall, et cetera, the Court finds that this goes too far. And taking into consideration the model jury instructions on the law of self-defense, that this instruction, even going so far as to say that one is entitled to pursue his assailant until the latter has been disarmed or disabled from carrying into effect his unlawful purpose, and this right of the Defendant goes to the extent, if necessary, of even taking human life, I don't think is an ideal statement of the law of self-defense as it stands in the State of Colorado at this time.

---

1. The Court of Appeals opinion erroneously indicates that Idrogo was found guilty of the offense of second degree murder. *People v. Idrogo*, No. 87CA1250, slip op. at 1 (Colo.App. Mar. 22, 1990) (not selected for official publication).

2. The evidence at trial with respect to the conduct of the principal participants in the events occurring on September 6, 1986, was presented by several witnesses who witnessed only various portions of such events. The material facts as outlined here, while based on often conflicting evidence, appear to be undisputed for purposes of this appeal.

The jury ultimately found Idrogo guilty of the lesser included offense of reckless manslaughter and also returned guilty verdicts to the counts alleging crime of violence and habitual criminal.

On appeal, the Court of Appeals affirmed the trial court, stating that:

Under the language of this instruction, defendant would have us take the "no duty to retreat" doctrine a step further by instructing a jury that a right exists to take a life. That theory does not reflect the state of the law and failure to so instruct does not constitute error.

## II

■ Idrogo asserts that the trial court and the Court of Appeals erred because the instruction he tendered accurately reflected the law of self-defense in this jurisdiction in relation to the facts of this case. While we conclude that a portion of the tendered instruction is inaccurate, we also conclude that in the circumstances of this case Idrogo was entitled to an instruction explicitly explaining the doctrine of no-retreat as codified in section 18–1–704(2)(a), 8B C.R.S. (1986).

The affirmative defense of self-defense is codified at section 18–1–704, 8B C.R.S. (1986). That statute states, in pertinent part, as follows:

(1) ... a person is justified in using physical force upon another person in order to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful physical force by that other person, and he may use a degree of force which he reasonably believes to be necessary for that purpose.

(2) Deadly physical force may be used only if a person reasonably believes a lesser degree of force is inadequate and:

(a) The actor has reasonable ground to believe, and does believe, that he or another person is in imminent danger of being killed or of receiving great bodily injury....

§ 18–1–704(1) and (2)(a), 8B C.R.S. (1986). We have consistently held that where the record contains any evidence tending to establish the defense of self-defense, the defendant is entitled to have the jury properly instructed with respect to that defense. *See, e.g., People v. Dillon*, 655 P.2d 841 (Colo.1982); *Young v. People*, 47 Colo. 352, 107 P. 274 (1910). We have also held that although an instruction couched in terms of the language of the statute is proper, *Vigil v. People*, 143 Colo. 328, 353 P.2d 82 (1960), a trial court must tailor instructions to the particular circumstances of a given case when the instructions, taken as a whole, do not adequately apprise the jury of the law of self-defense from the standpoint of the defendant. *People v. Jones*, 675 P.2d 9 (Colo.1984); *Young v. People*, 47 Colo. 352, 107 P. 274. *See also Bustamonte v. People*, 157 Colo. 146, 401 P.2d 597 (1965). *See generally, Leonard v. People*, 149 Colo. 360, 369 P.2d 54 (1962).

The People do not dispute that, given the testimony adduced at trial, Idrogo was entitled to have the jury instructed on the issue of self-defense. The People assert, however, that the instruction tendered by Idrogo contained an incorrect statement of law. The People argue that even though there is no general duty to retreat before acting in self-defense, such a duty arises before a defendant may use deadly force. We reject this argument. Furthermore, while we acknowledge that Idrogo's tendered instruction is in part erroneous, we do not agree that the trial court was therefore free to disregard Idrogo's request for a no-retreat instruction.

At common law, one had a duty to retreat before resorting to force to defend against an aggressor. *See People v. Watson*, 671 P.2d 973 (Colo.App.1983). The common-law doctrine was modified in this jurisdiction just prior to the turn of the century. *Boykin v. People*, 22 Colo. 496, 45 P. 419 (1896).

The General Assembly has in essence codified the principles developed by this court. *Beckett v. People*, 800 P.2d 74, 78 (Colo.1990).[3] In section 18–1–704(2), the

---

3. In *Beckett,* this court held that a separate instruction defining a defendant's right to act

General Assembly has expressly authorized the use of deadly physical force by a non-aggressor when the non-aggressor believes, on reasonable grounds, that he, she or another person is in imminent danger of receiving great bodily harm. The statute contains no language reflecting any intention by the General Assembly to revive the doctrine of retreat.

In *Boykin*, we articulated the right of a person to resort to self-defense as follows:

> [W]here a defendant is where he has a right to be, as, for example, a police officer engaged in making an arrest, and is assaulted by the deceased in a way that defendant honestly and in good faith believes, and the circumstances being such as would induce a like belief in a reasonable man, that he is about to receive at the hands of his assailant great bodily harm, or to lose his life, the defendant, if he did not provoke the assault, or is not within some of the exceptions above noted, is not obliged to retreat or flee to save his life, but may stand his ground, and even, in some circumstances, pursue his assailant until the latter has been disarmed or disabled from carrying into effect his unlawful purpose; and this right of the defendant goes even to the extent, if necessary, of taking human life.

*Boykin v. People*, 22 Colo. 496, 504, 45 P. 419, 422. Idrogo's tendered instruction was modeled on our language in *Boykin*. The People argue that *Boykin* is inapplicable because it dealt with conduct of a police officer, and the common law consistently recognized that a police officer attempting to effect a lawful arrest was not subject to the general rule requiring retreat before using deadly force. *See Lynn v. People*, 170 Ill. 527, 48 N.E. 964 (1897); *State v. Smith*, 127 Iowa 534, 103 N.W. 944 (1905); *State v. Ellis*, 241 N.C. 702, 86 S.E.2d 272 (1955). *See also Ealey v. City of Detroit*, 144 Mich.App. 324, 375 N.W.2d 435 (1985); *People v. Johnson*, 75 Mich.App. 337, 254 N.W.2d 667 (1977). Although it is true that *Boykin* involved a police officer at-

tempting to effect an arrest, we noted therein that in some circumstances a non-aggressor not a police officer need not retreat from an aggressor prior to using deadly physical force in self-defense. *See Boykin*, 22 Colo. at 504, 45 P. at 422. Since *Boykin*, this court has consistently affirmed that an innocent victim of an assault is not bound to retreat before using deadly force when the use of such force is reasonable under the circumstances. *See People v. Sepeda*, 196 Colo. 13, 23, 581 P.2d 723, 730 (1978); *People v. Favors*, 192 Colo. 136, 140, 556 P.2d 72, 75 (1976); *Hinton v. People*, 169 Colo. 545, 553, 458 P.2d 611, 614 (1969); *Enyart v. People*, 67 Colo. 434, 439, 180 P. 722, 724 (1919); *Harris v. People*, 32 Colo. 211, 218, 75 P. 427, 430 (1904); *Ritchey v. People*, 23 Colo. 314, 321, 47 P. 272, 274 (1896). *See also People v. May*, 745 P.2d 218, 221 (Colo.1987) (attorney who, *inter alia*, failed to submit instruction on no duty to retreat disciplined); *Leonard v. People*, 149 Colo. 360, 377, 369 P.2d 54, 63 (1962) (court approves, in dicta, of instruction on no duty to retreat). Section 18–1–704, 8B C.R.S. (1986), represents legislative codification of our decisions with respect to this principle. *Beckett v. People*, 800 P.2d at 78. We disagree that *Boykin* is distinguishable in any meaningful way.

It is true, as the trial court and the Court of Appeals observed, that the latter portion of Idrogo's tendered instruction, suggesting that a person acting in self-defense may turn aggressor, pursue a withdrawing initial aggressor and in some circumstances use deadly physical force to disarm or disable such initial aggressor, is not supported by our case law. While similar language appears in *Boykin, see Boykin*, 22 Colo. at 504, 45 P. at 422, that dicta is related to the circumstances of that case and has reference to the duty of police officers to disarm persons suspected of committing crimes. While the duty of no retreat has been extended generally to non-aggressors, the same may not be said for the right to pursue an initial aggressor who has with-

---

upon "apparent necessity" was not required when the jury was instructed pursuant to § 18–

1–704 that a defendant is entitled to act in self-defense upon the defendant's reasonable belief.

drawn from the fray. *See People v. Sepeda*, 196 Colo. at 23, 581 P.2d at 730–31.

The People also argue that the self-defense instruction given by the trial court adequately apprised the jury of the principle that Idrogo had no duty to retreat. We again disagree.

■ The trial court instructed the jury that Idrogo was entitled to use deadly force if he reasonably believed a lesser degree of force was inadequate and if the victim was committing or reasonably appeared to be committing an assault. This instruction does not inform the jury, directly or indirectly, that if Idrogo were not the initial aggressor he need not retreat at all to be entitled to use deadly force if he believed such force to be necessary in light of Raymond's conduct and the belief was based on reasonable grounds. Because the jury could reasonably have concluded on the basis of the instructions given at trial that Idrogo's failure to retreat was evidence that a lesser degree of force would have been adequate, an instruction explaining that Idrogo had no duty to retreat would not, as the People argue, have been redundant. A trial court's failure to properly instruct a jury on the applicable law of self-defense deprives the defendant of the right to an acquittal on the ground of self-defense if the jury could have had a reasonable doubt as to whether the defendant acted in necessary self-defense. *Leonard v. People*, 149 Colo. at 377, 369 P.2d at 63.

The case of *Beckett v. People*, 800 P.2d 74 (Colo.1990), relied upon by the People, does not support a contrary result. In *Beckett*, we concluded that the language of the self-defense statute, section 18–1–704, abrogated the necessity for a specific instruction on the doctrine of apparent necessity. That case is supportive of Idrogo's argument that the statute affirms the principle that a non-aggressor need not retreat before using deadly force when the non-aggressor believes, on reasonable grounds,

that he, she or another person is in imminent danger of receiving great bodily harm.

Our determination that the legislature did not intend to change the doctrine of no duty to retreat is supported by a comparison of section 18–1–704(2), 8B C.R.S. (1986), with section 18–1–704(3)(b), 8B C.R.S. (1986). The latter statute expressly requires retreat before physical force is justifiable where the defendant is the initial aggressor.[4] Section 18–1–704(3)(b) reflects the common law rule that an initial aggressor is not entitled to assert the right to stand one's ground in self-defense, and jurisdictions that follow this rule have universally recognized such initial aggressor exception. *Commonwealth v. Naylor*, 407 Mass. 333, 553 N.E.2d 542 (1990); *State v. Foster*, 91 Wash.2d 466, 589 P.2d 789 (1979) (en banc); Annotation, *Comment Note: Withdrawal, After Provocation of Conflict, As Reviving Right of Self–Defense*, 55 A.L.R.3d 1000 § 3 (1974). Section 18–1–704(2) contains no language restricting the circumstances in which a non-aggressor may use physical force, including deadly physical force, when such person believes, on reasonable grounds, that such conduct is necessary to avoid great bodily harm.

The People finally suggest that this court should create an absolute duty of retreat before an innocent non-aggressor may resort to the use of deadly force when reasonably necessary for purposes of self-defense. We disagree.

■ The long-established rule in Colorado is that an innocent victim of assault need not retreat before using deadly force if the victim believes the use of such force is necessary for self-protection and the belief is based on reasonable grounds. This rule remains the majority view in this country. *Brown v. United States*, 256 U.S. 335, 41 S.Ct. 501, 65 L.Ed. 961 (1921); *People v. Gonzales*, 71 Cal. 569, 12 P. 783 (1887); *Runyan v. State*, 57 Ind. 80 (1877);

---

**4.** Section 18–1–704(3)(b) states that:

Notwithstanding the provisions of subsection (1) of this section, a person is not justified in using physical force if:

. . . .

(b) He is the initial aggressor, except that his use of physical force upon another person under circumstances is justifiable if he withdraws from the encounter and effectively communicates to the other person his intent to do so. . . .

*Haynes v. State,* 451 So.2d 227 (Miss.1984); *Voight v. State,* 53 Tex.Crim. 268, 109 S.W. 205 (1908); *People v. Johnson,* 75 Mich. App. 337, 254 N.W.2d 667 (1977). *See generally,* LaFave & Scott, *Criminal Law* § 5.7(f) (2d ed. 1986); C.E. Torcia, *Wharton's Criminal Law* § 126, (14th ed. 1979). *But see Model Penal Code and Commentaries* § 3.04 (1985). Under the circumstances of this case, where the question of whether Idrogo did in fact retreat was vigorously disputed, Idrogo was entitled to have the jury properly instructed on the applicable law of non-retreat. To the extent the trial court found portions of Idrogo's tendered instruction objectionable, it erred in not ensuring that the jury received a proper alternative instruction setting forth the rule relied upon by Idrogo. *People v. Moya,* 182 Colo. 290, 512 P.2d 1155 (1973). *See People v. Bookman,* 646 P.2d 924 (Colo.1982); *People v. Weiss,* 717 P.2d 511 (Colo.App.1985).

### III

For the foregoing reasons, the judgment of the Court of Appeals is reversed and the case is remanded to that court with directions to remand to the trial court for new trial.

VOLLACK, J., dissents.

Justice VOLLACK dissenting:

The majority holds that a trial court instructing a jury on use of physical force in defense of a person, § 18–1–704, 8B C.R.S. (1986), also must tender an amplifying self-defense instruction concerning "no retreat" if the defendant is not the aggressor. I disagree. The statute, section 18–1–704, encompasses the "no retreat" doctrine and abrogates the need for any amplifying instruction. *See Beckett v. People,* 800 P.2d 74 (Colo.1990).

The defendant, Idrogo (defendant), and his girlfriend, Carol Babb (Babb), encountered William and Raymond Archuleta on September 6, 1986, at a liquor store in Colorado Springs, Colorado. Both Archuletas appeared to be intoxicated. William Archuleta tried to convince the defendant to sell him some marijuana. The defendant refused and walked away. When William persisted, the defendant took out a knife and, according to Babb, said to William, "Get away. You don't want to get cut. Just leave us alone." William Archuleta backed off. The defendant and Babb continued to walk away by walking backwards, facing the direction of the liquor store. It was then, according to Babb, that Raymond Archuleta rapidly approached the defendant and Babb, making angry and threatening comments. The defendant still had the knife in his hand and continued to walk backwards away from Raymond into a cul-de-sac.

According to the testimony of a second key eyewitness, Alan Daniels (Daniels), a customer at the liquor store who saw the events leading up to and immediately after the stabbing from across the street, Raymond Archuleta followed the defendant and began bobbing and weaving like he was going to go after somebody and hit them. Raymond then lunged toward the defendant with his fists raised like he was going to hit someone. Raymond went out of Daniels' sight when he lunged at the defendant and was next seen by Daniels shortly thereafter, walking backwards with his hands on his chest, fatally wounded.

Babb testified that Raymond Archuleta had intercepted her and the defendant. Raymond struck the defendant with his fist two or three times in the shoulder and head area. The defendant had the knife raised in the air and was telling Raymond to get away if he did not want to get cut. Raymond hit the defendant again, at which time the defendant stabbed him once in the chest.

The defendant was charged with murder in the second degree, crime of violence, and as an habitual criminal. The defendant asserted the affirmative defense of use of physical force in defense of a person ("self-defense"). § 18–1–704. The defendant was convicted of reckless manslaughter, crime of violence, and as an habitual criminal. The court of appeals affirmed, and we accepted certiorari on the question of whether the trial court erred in not includ-

ing a jury instruction clarifying whether the defendant had a duty to retreat in order to claim the right to use deadly force in self-defense.

## I.

Section 18–1–704(1), 8B C.R.S. (1986), is a codification of the common-law defense of self-defense. This section provides:

(1) Except as provided in subsections (2) and (3) of this section, a person is justified in using physical force upon another person in order to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful physical force by that other person, and he may use a degree of force which he reasonably believes to be necessary for that purpose.

Sections 18–1–704(2) and (3), 8B C.R.S. (1986), establish limits on the general rule set forth in section 18–1–704(1). These sections provide as follows:

(2) Deadly physical force may be used only if a person reasonably believes a lesser degree of force is inadequate and:

(a) The actor has reasonable ground to believe, and does believe, that he or another person is in imminent danger of being killed or of receiving great bodily injury; or

(b) The other person is using or reasonably appears about to use physical force against an occupant of a dwelling or business establishment while committing or attempting to commit burglary as defined in sections 18–4–202 to 18–4–204; or

(c) The other person is committing or reasonably appears about to commit kidnapping as defined in section 18–3–301 or 18–3–302, robbery as defined in section 18–4–301 or 18–4–302, sexual assault as set forth in section 18–3–402 or 18–3–403, or assault as defined in sections 18–3–202 and 18–3–203.

(3) Notwithstanding the provisions of subsection (1) of this section, a person is not justified in using physical force if:

(a) With intent to cause bodily injury or death to another person, he provokes the use of unlawful physical force by that other person; or

(b) He is the initial aggressor, except that his use of physical force upon another person under the circumstances is justifiable if he withdraws from the encounter and effectively communicates to the other person his intent to do so, but the latter nevertheless continues or threatens the use of unlawful physical force; or

(c) The physical force involved is the product of a combat by agreement not specifically authorized by law.

### A.

I agree with the majority that section 18–1–704 also represents legislative codification of our decisions with respect to non-retreat. Maj. op. at 755. The majority, however, then holds under the provisions of section 18–1–704(2) that an amplifying instruction on "no retreat" is required, contrary to our holding in *Beckett v. People*, 800 P.2d 74 (Colo.1990). In *Beckett*, we stated that the language of the self-defense statute, section 18–1–704, abrogated the need for a specific instruction on the doctrine of apparent necessity. Maj. op. at 756. The law of self-defense is emphatically the law of necessity. *People v. Jones*, 675 P.2d 9, 13 (Colo.1984) (quoting *Young v. People*, 47 Colo. 352, 355, 107 P. 274, 275–76 (1910)). Under section 18–1–704, the phrase, "a degree of force which he reasonably believes to be necessary for that purpose," reflects the common-law "necessity" requirement in the context of self-defense. § 18–1–704(1).

In *Beckett*, we concluded that "reasonable belief" encompassed the principle of apparent necessity. 800 P.2d at 78. Retreat is also a necessity-based doctrine.[1]

---

**1.** In the context of self-defense, necessity can be actual, real, or apparent, *Jones*, 675 P.2d at 13–14, and under the common law, was subject to modification. P.H. Robinson, *Criminal Law De-* *fenses* § 131(c), 77–81 (1984). The retreat rule was a "common modification of the necessity element in the use of defensive force." *Id.*

P.H. Robinson, *Criminal Law Defenses* § 131(c), 77–81 (1984). Under section 18–1–704, the issue of necessity, including whether it is necessary for a defendant to retreat or whether the danger is apparent, is adequately considered in the "totality of circumstances" that the trier of fact must consider in evaluating the reasonableness of the accused's belief in the necessity of defensive action. *See Beckett,* 800 P.2d at 78 (quoting *Jones,* 675 P.2d at 14).

In the present case, evidence of the defendant's ability or inability to retreat was adequately considered when the trier of fact considered the "totality of circumstances in evaluating the reasonableness of the accused's belief in the necessity of defensive action." *Jones,* 675 P.2d at 14. The jury was adequately apprised of its duty to consider the necessity-based doctrines, such as apparent necessity and the duty to retreat, by the language in the statute and the pattern jury instructions that stated a person may use "a degree of force which he *reasonably believes* to be necessary for that purpose." § 18–1–704(1) (emphasis added). *See Beckett,* 800 P.2d at 77–78. Under section 18–1–704(2), the statutory language encompasses the "no retreat" doctrine and abrogates the need for any amplifying instruction. *See id.* at 77–78.

### II.

A careful review of the record reflects that section 18–1–704(3)(a), not section 18–1–704(2), is the proper focus for review in this case. The trial court gave the affirmative defense of self-defense instructions, CJI–Crim. 7:17, as instruction No. 20, which provided:

> It is an affirmative defense to the crime(s) of second degree murder, manslaughter and criminally negligent homicide that the defendant used deadly physical force because
>
> 1. he reasonably believed a lesser degree of force was inadequate, *and*
>
> 2. had reasonable grounds to believe, and did believe, that he or another person was in imminent danger of being killed or of receiving "great bodily injury."

The record further reflects the People raised the issue that the defendant, by waving the knife and holding it in plain view, provoked Raymond Archuleta to attack him. According to witnesses, the defendant had the knife in plain view from the time he pulled it out to ward off William Archuleta until the stabbing of Raymond Archuleta. Under the provisions of section 18–1–704(3)(a), these facts, if true, would defeat the defendant's claim of self-defense. The trial court included, at the request of the prosecution, instruction No. 21, which reflects CJI–Crim. 7:68, special rule 7(13):

> A person is not justified in using physical force if with intent to cause bodily injury or death to another person, he provoked the use of unlawful physical force by that person.

In response to the People's provocation theory under section 18–1–704(3)(a), the defense requested the instruction based on the language in *Boykin v. People,* 22 Colo. 496, 45 P. 419 (1896). Defense counsel stated that this instruction was "basically language about, if the Defendant didn't *provoke* the fight, he's not required to retreat, but may stand his ground." The trial court rejected this instruction.

Thus, the record, and defendant's comments, demonstrate that the court's instruction and the defendant's tendered instruction addressed the People's contention that the defendant *provoked* the fight. Accordingly, our review of this case should be limited to whether section 18–1–704(3)(a) requires the instruction tendered by the defendant and *not* whether such an instruction is required by section 18–1–704(2) or some other section. However, under either section 18–1–704(3)(a) or section 18–1–704(2), the outcome is the same. The statute has abrogated the need for an amplifying instruction.

### A.

At common law, a person had to retreat before countering the use of force with force. *See People v. Watson,* 671 P.2d 973, 974 (Colo.App.1983). In Colorado, at the

turn of the century, this common-law retreat doctrine was modified. *Harris v. People*, 32 Colo. 211, 218, 75 P. 427, 430 (1904). The retreat doctrine was applicable only in cases "where the defendant voluntarily enters into a fight or where the parties engage in mutual combat, or where the defendant, being the assailant, does not endeavor in good faith to decline any further struggle before firing the fatal shot, and possibly in other similar cases." *Id.* at 218–19, 75 P. at 430.[2] Thus, under this early case law, the retreat doctrine was not applicable unless a defendant was blameworthy to some degree in instituting the incident that gave rise to the need to defend. In 1971, with the enactment of section 18–1–704, the General Assembly codified the principles developed by this court in earlier decisions. *See* maj. op. at 754. The defendant's tendered instruction was based on language in a case decided by this court in 1896, *Boykin v. People*, 22 Colo. 496, 45 P. 419. The legislature was aware of the rule in *Boykin* when it enacted the statute, yet chose not to include any language in section 18–1–704(3)(a) of withdrawal or retreat.[3]

Under a plain reading of section 18–1–704(3)(a), if the defendant provoked the attack, there would be no justification of the use of force, and thus no need to give an amplifying instruction of non-retreat. The trier of fact must determine whether the defendant did or did not provoke the encounter. If they find he did provoke the encounter, then whether he retreated or not is of no consequence. If the trier of fact finds that the defendant did not provoke the encounter, then the instruction given under his affirmative defense would be considered by the trier of fact without the need of any amplifying instruction of no retreat. *See Beckett*, 800 P.2d at 77–78. The record reflects from the testimony of an unbiased witness that this defendant was in a continuing state of retreat and the jury found his conduct to be *reckless* when he stabbed the victim. The facts of this case, applied to the clear meaning of the statute, do not support the conclusion that the defendant was entitled to an amplifying instruction on "no retreat." I therefore respectfully dissent.

---

2. Thus, this court recognized a distinction between the application of the doctrine of retreat when the defendant was claiming a "justifiable" self-defense versus an excusable self-defense. *See* Tortia, II *Wharton's Criminal Law* § 126, at 132 (14th ed. 1979). If the defendant was acting in justifiable self-defense, i.e., the defendant was not at fault in bringing on the attack, the defendant did not need to retreat before countering force with force. *See id.* If the defendant was acting in excusable self-defense, i.e., the defendant was blameworthy in bringing on the attack, then the defendant needed to retreat before claiming self-defense. *See id.*

3. Section 18–1–704 contains no language reflecting any intention by the General Assembly that § 18–1–704(3)(a) requires a special application of the doctrine of retreat. *See* maj. op. at 754 (Section 18–1–704(2) "contains no language reflecting any intention by the General Assembly to revive the doctrine of retreat."). Section 18–1–704(3)(b) is the only section in the self-defense statute that expressly incorporates the common-law retreat doctrine and, consequently, is the only section that requires an alternate jury instruction. *See* maj. op. at 756 (stating that § 18–1–704(3)(b) expressly requires retreat before physical force is justifiable where the defendant is the initial aggressor). Under § 18–1–704(3)(b), if a defendant is the initial aggressor, his use of force is not justifiable unless he first withdraws. This express intent of the legislature, that the doctrine of retreat is applicable when initial aggressor status is at issue, is reflected in the pattern jury instruction. Pattern jury instruction 7:68, special rule 7(15), states:

7(15) Retreat to the Wall

Where the defendant is the initial aggressor he must, in order to rely on self-defense, have withdrawn from the affray and have communicated the desire to withdraw to his opponent. However, if the defendant was not the initial aggressor, and was where he had a right to be, he was not required to retreat to a position of no escape in order to claim the right to employ force in his own defense. CJI–Crim. 7:68, Special Rule 7(15). Unlike § 18–1–704(3)(b), § 18–1–704(3)(a) contains no language reflecting the *Boykin* rule that if the defendant provoked the fight, a subsequent withdrawal would give the defendant the right to claim self-defense.